UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BARRY BOLES,

        Plaintiff

                    v.

WAL-MART STORES, INC.,

        Defendant

CIVIL ACTION NO. 2:12-cv 1762

Document Electronically Filed

---

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Colin M. Page & Associates
Attorneys for the Plaintiff
Barry Boles
333 Route 46 West, 2nd Floor
Mountain Lakes, NJ 07046
T: 973-794-6188  |  F: 973-909-7553
colin@page-employment-law.com

On the Brief:  Colin M. Page, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT........................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS......................... 4

LEGAL ARGUMENT................................................. 4

I.   WAL-MART FAILED TO REASONABLY ACCOMMODATE BOLES ........... 4

  A.   Boles Was Entitled to Leave as a Reasonable Accommodation 5

  B.   Wal-Mart Failed to Reasonably Accommodate Boles When It
  Refused to Place Him Back in His Open Position .............. 8

  C.   Wal-Mart Failed to Engage in the Interactive Process ... 10

  D.   At the Very Least, There are Disputed Issues of Fact and
  Defendant is Not Entitled to Summary Judgment ............... 15

II.  Boles Has Evidence of Pretext on His Claims of Disability
Discrimination and Retaliation................................ 16

  A.   Wal-Mart's Explanation Defies Common Sense ............ 19

  B.   Boles Has Evidence of Discriminatory Animus ........... 20

  C.   A Reasonable Fact-Finder Has Already Rejected Wal-Mart's
  Claim that Boles Abandoned His Job ......................... 21

III.  Wal-Mart Interfered with Boles' FMLA Rights by Failing to
Properly Advise Him When His Leave Would Expire............... 23

IV.  Wal-Mart's Distortions of the Law and Facts ............. 26

CONCLUSION.................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brosshead v. Hackensack Univ. Med. Ctr.,* 345 *N.J.Super.* 78 (App.Div.2001) .............................................. 5

*Cebula v. Catalina Mktg Corp.,* OAL Docket No. CRT 05588-02 (January 26, 2004) ........................................ 7

*Clowes v. Terminix Int'l, Inc.,* 109 N.J. 575 (1988).......... 17

*Conoshenti v. Public Elec. & Gas Co.,* 364 F. 3d 135 (3rd Cir. 2004) .............................................. 6, 7, 27

*Erickson v. Marsh & McLennan Co.,* 117 N.J. 539 (1990)........ 16

*Floyd v. Lee,* 2013 WL 5429265 (D.C.Cir. Sept. 30, 2013)...... 18

*Fuentes v. Perskie,* 32 *F.3d* 759 (3d Cir.1994)................ 18

*Gibbs v. Caswell-Massey,* 2011 WL 4974727 (App. Div. Oct. 20, 2011) ............................................... 22

*Gile v. United Airlines, Inc.,* 95 F.3d 492 (7th Cir. 1996) ..... 9

*Grigoletti v. Ortho Pharmaceutical Corp.,* 118 N.J. 89 (1990). . . . . . . . . . . . . . . . . . . . . . . .. 8, 19

*Haitz v. Don Jacobs Imports, Inc.,* 2011 WL 4743384 (E.D.Ky. Oct. 6 2011) ................................... 25

*Jones v. Aluminum Shapes, Inc.* 339 N.J.Super. 412 (App. Div. 2001) ....................................... 11

*Linton v. L'Oreal USA,* 2009 WL 838766 (D.N.J. 2009)..... 5, 7, 16

*McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792 (1973)......... 16

*Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173 (6th Cir. 1996) .......................................... 9

*Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1234 (1999).......... 13

*Potente v. County of Hudson,* 187 N.J. 103 (2006).......... 13, 14

Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002).... 23

*Romano v. Brown & Williamson Tobacco Corp.,* 284 *N.J.Super.* 543 (App.Div. 1995) ....................................... 17

*Santiago v. County of Passaic,* 2009 WL 483159 (App. Div. Feb. 27, 2009) ......................................... 6, 7, 27

*Seiden v. Marina Assoc.,* 315 *N.J.Super.* 451 (Law Div. 1998).... 5

*Shepherd v. Honda of America Mfg., Inc.,* 160 F.Supp.2d 860
   (S.D.Ohio 2001) ........................................... 25

*Smith v. Midland Brake,* 180 F.3d 1154(10th Cir. 1999) ...... 9, 11

*Soules v. Mount* Holiness Mem. Park, 354 *N.J.Super.* 569
   (App.Div. 2002) ........................................... 5, 7

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993)........... 17

*Taylor v. Phoenixville School District*, 184 F.3d 296
   (3d Cir. 1999) ............................................ 12

*Tynan v. Vicinage 13 of the Superior Court*, 351 N.J.Super. 385
   (App. Div. 2002) .......................................... 7

*Wagoner v. Medco Health Solutions, Inc.*, 2009 WL 749572 (D.N.J.
   March 18, 2009) ......................................... 18, 20

*Williams v. Phila. Housing Authority*, 380 F.3d 751
   (3d Cir. 2004) ............................................ 10

**Statutes**

*N.J.S.A.* 10:5-4.1............................................. 7

*N.J.S.A.* 10:5-5(q) ........................................... 5

**Other Authorities**

EEOC Office of Legal Counsel Fact Sheet -
   http://www.eeoc.gov/policy/docs/fmlaada.html ................. 9

**Rules**

29 C.F.R. §825.300............................................. 23

29 C.F.R. §825.301(d) ......................................... 23

*N.J.A.C.* 13:13-2.8 ........................................... 6

*N.J.A.C.* 13:13-2.8(a) ........................................ 6

## PRELIMINARY STATEMENT

This case presents the question of whether an employee with a disability is entitled to his job back under the New Jersey Law Against Discrimination (NJLAD) when he attempts to return from an approved medical leave and his position is still open. Over the course of approximately twelve (12) years and multiple promotions, Barry Boles ("Boles") worked his way up from a backroom associate to Assistant Manager. He was proud of his career at Wal-Mart and enjoyed working for the company. In early May 2011, he developed a large blister the size of his fist on his lower leg which ulcerated leaving a large open wound. He went to the emergency room and then to Dr. Gail Mautner, a Board Certified Dermatologist. Dr. Mautner certified to Wal-Mart that Boles had a serious health condition and recommended that he take leave from work. Unfortunately, Boles wound was very slow to heal as the lower leg has poor circulation. In July, Boles requested an extension of his leave and Dr. Mautner again certified that he required leave through November.

Throughout this process, Wal-Mart repeatedly failed to meet its obligations under the FMLA and its own policies. Required FMLA notifications were not generated until months after Boles requested lave. Moreover, Boles never received the required

1

notifications.    While  Dr.  Mautner  certified  Boles'  need  for
leave  until  November  2011,  leave  was  only  granted  until
September  29th.  However,  no  one  from  Wal-Mart  notified  Boles  of
this  fact  or  discussed  his  need  for  additional  leave  with  him  or
his  doctor.  Boles  provided  updates  to  the  regional  Human
Resources  manager  through  voice-mails  and  text  messages.  On
October  17,  2012  Dr.  Mautner  cleared  Boles  to  return  on  October
24,  2011  Boles  reported  to  work  that  day.  At  that  time,  Boles'
position  was  still  open.  Wal-Mart  did  not  allow  Boles  to  return
and  on  October  27,  2011  they  sent  notification  that  his
employment  was  terminated  for  job  abandonment.

Boles  now  asserts  claims  of  failure  to  accommodate
disability,  disability  discrimination  and  retaliation  under  the
New  Jersey  Law  Against  Discrimination.   In  addition,  Boles
claims  Wal-Mart  interfered  with  his  FMLA  rights  by  failing  to
advise  him  of  the  expiration  of  his  protected  leave.   Boles'
cross-motion  for  summary  judgment  is  premised  on  Wal-Mart's
failure  to  place  him  back  in  his  open  position  when  he  was
cleared  to  return  to  work.  Moreover,  Wal-Mart  failed  to  engage
in  the  "interactive  process"  when  it  only  approved  leave  through
September  29,  2011  and  made  no  attempt  to  discuss  his  need  for
leave  beyond  that  date.   At  the  very  least,  Boles  has  offered

sufficient facts to justify denial of Wal-Mart's motion for summary judgment.

Boles has evidence that Wal-Mart's explanation for his termination is a pretext. First, it defies common sense for Wal-Mart to claim Boles abandoned his job when it never warned him that he had been out too long and it did not terminate him until several days after he actually showed up for work. Based on the timing, a reasonable jury could find that it was not Boles' absence that Wal-Mart found objectionable but that it did not wish to employ a disabled employee and/or that it wanted to punish him for taking leave. Boles has direct evidence of discriminatory/retaliatory intent, as his manager sought his termination while he was on leave. Finally, Wal-Mart's explanation has already been rejected. New Jersey's Unemployment Appeals Tribunal found that Boles did not abandon his job. Accordingly, the court should deny summary judgment on Boles' disability discrimination and retaliation claims.

Finally, Wal-Mart blatantly failed to meet its notice obligations under the FMLA and it designated his leave retroactively and never gave him a chance to return before his job-protected leave was used up. Boles was not totally disabled. Had he known his job was at stake he could have explored returning to work light duty or returned and taken his

chances because he needed his job to support his family. Notably, Wal-Mart claims in its brief that Boles should have been able to return before he did and faults him for requesting leave instead of light duty work. Accordingly, the court should deny summary judgment on Boles' FMLA interference claim.

## COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff incorporates by reference the undisputed material facts contained in his Counter-Statement of Undisputed Material Facts submitted herewith in support of Plaintiff's cross-motion for summary judgment and in opposition to Defendant's motion for summary judgment.

## LEGAL ARGUMENT

### I.  WAL-MART FAILED TO REASONABLY ACCOMMODATE BOLES

Boles was entitled to reasonable accommodation in the form of return to his open position and/or reasonable extension of his leave. There is no dispute that Wal-Mart knew Dr. Mautner had certified Boles' need for leave through November, that Wal-Mart _never_ discussed extending leave beyond September 30, 2011 with Boles or Dr. Mautner and failed to place him in his open position when he was cleared to return. Accordingly, Boles is entitled to summary judgment on his failure to accommodate claim.

4

A. **Boles Was Entitled to Leave as a Reasonable Accommodation**

A prima facie case of failure to accommodate is made when the employee sets forth proof that he (1) has a disability under the NJLAD; (2) is qualified to perform the essential functions of the job with or without accommodation; and (3) has suffered an adverse employment action because of the disability. *Brosshead v. Hackensack Univ. Med. Ctr.,* 345 *N.J.Super.* 78, 91 (App.Div.2001); *Seiden v. Marina Assoc.,* 315 *N.J.Super.* 451, 459 (Law Div. 1998). *N.J.S.A.* 10:5-5(q) broadly defines "disability" to include any "physical disability ... which prevents the normal exercise of any bodily ... function." The NJLAD's definition of disability encompasses temporary medical conditions such as the condition Boles suffered. *See Soules v. Mount* Holiness Mem. Park, 354 *N.J.Super.* 569, 573-74, (App.Div. 2002) (a "temporary inability to work while recuperating from surgery or injury is a handicap" under the LAD). *Also see Linton v. L'Oreal USA,* 2009 WL 838766, *3 (D.N.J. 2009)("Plaintiff's ankle sprain constituted a "handicap" for purposes of the NJLAD.").

Boles was qualified to perform the job with reasonable accommodation. He had trained for the Assistant Manager position for nearly a year. He had formally been in the position for approximately six (6) months. Although, Wal-Mart claims Boles had performance issues and cites unsupported

hearsay documents, there is no evidence that Wal-Mart terminated Boles because of his performance. Wal-Mart's only claim is that Boles abandoned his job by failing to return to work by September 30, 2011. Accordingly, the Court should find that Boles was qualified to perform the functions of his job with accommodation.

Temporary medical leave is considered a form of reasonable accommodation under the NJLAD. Wal-Mart claims that temporary medical leave is not considered a reasonable accommodation under the NJLAD citing *Conoshenti v. Public Elec. & Gas Co.,* 364 F. 3d 135 (3rd Cir. 2004) as its only support. In *Conoshenti*, the Third Circuit relied on *N.J.A.C.* 13:13-2.8(a) which at the time provided an exception to an employer's obligation to reasonably accommodate where its employee "cannot *presently* perform the job even with reasonable accommodation." *Id at 150 (emphasis added).* The Third Circuit found that an employee on leave could not "presently perform" and so medical leave was not required under the NJLAD. *Id at 151.* However, *Conoshenti* does not reflect current state of the law because *N.J.A.C.* 13:13-2.8 was amended to remove the requirement that employees be able to "presently" perform their job. *See Santiago v. County of Passaic,* 2009 WL 483159 (App. Div. Feb. 27, 2009) where the Appellate Division recognized:

[T]he precendential weight of *Conoshenti* was dissolved by amendment of N.J.A.C. 13:13-2.8 to remove the word "presently" in conjunction with the disabled individual's ability to perform his or her job in order to clarify that a leave of absence was a form of reasonable accommodation in employment under the LAD. *See 38 N.J.R. 1* (January 2006). The amended regulation was an obvious response to *Conoshenti*. Noting that *N.J.S.A.* 10:5-4.1 did not contain the word "presently" or similar language, the DCR Director conclude that neither the letter not the intent of any provision of the LAD precluded the determination that a leave of absence is a possible accommodation under the LAD. The amended regulation was adopted by the DCR Director on December 1, 2005, with an effective date of January 3, 2006.

It is clear now that medical leave is considered a reasonable accommodation under the NJLAD. *See Cebula v. Catalina Mktg Corp.*, OAL Docket No. CRT 05588-02, p. 22 (January 26, 2004)(Director of Division of Civil Rights states "time off from work is a form of accommodation which may be reasonable.")*See also Soules, supra*, 354 N.J.Super. at 577; *Tynan v. Vicinage 13 of the Superior Court*, 351 N.J.Super. 385, 401-02 (App. Div. 2002); *Santiago, supra,* 2009 WL 483159 at *5. *Also see Linton, supra, 2009 WL 838766* at *7 (finding employer's failure to engage in good faith discussion of extension of leave may violate NJLAD).

Finally, Boles suffered an adverse employment action due to his disability. He was terminated because he remained out on leave past September 30, 2011. Accordingly, the Court should

find that Boles has made out a prima facie case for failure to accommodate his disability in violation of the NJLAD

### B.  <u>Wal-Mart Failed to Reasonably Accommodate Boles When It Refused to Place Him Back in His Open Position</u>

The right to leave as a reasonable accommodation inherently includes a right to return to work.  Boles was not replaced and his employment was not terminated until after he was cleared to return to work.  Moreover, his leave never formally expired. Although his leave was officially approved only through September 29, 2011, Wal-Mart allowed him to stay out and continued to pay him through the date he attempted to return to work.  Accordingly, Wal-Mart should have allowed Boles to return to his open position when he was cleared to return to work by his doctor and attempted to return.

The EEOC and federal courts' interpretation of the ADA provide guidance for the interpretation of the NJLAD. *See Grigoletti v. Ortho Pharmaceutical Corp.*, 118 N.J. 89 (1990). The EEOC has taken the position that employees on leave are entitled to return to their position if it is open or to other open positions that they are capable of performing.

> **Under the ADA, the employee is entitled to return to the same job unless the employer demonstrates that holding the job open would impose an undue hardship.** In some instances, an employee may request more leave under the ADA even after the employer has communicated that it cannot hold the employee's job open any longer

8

(i.e., there is undue hardship). **In this situation, the ADA-covered employer must see if it has a vacant, equivalent position for which the employee is qualified and to which the employee can be reassigned without undue hardship** to continue his/her leave. **If an equivalent position is not available, the employer must look for a vacant position at a lower level.** Continued accommodation is not required if a vacant position at a lower level is also unavailable.

EEOC Office of Legal Counsel Fact Sheet - http://www.eeoc.gov/policy/docs/fmlaada.html (emphasis added). The principle that it is a reasonable accommodation for an employer to place a disabled employee in an open position is well-recognized in the reassignment context. Numerous courts interpreting the reasonable accommodation obligation under the ADA have held that the existing, disabled employee must be given preference for assignment to open positions that they are qualified to perform. *See Smith v. Midland Brake,* 180 F.3d 1154, 1167 (10th Cir. 1999)("We conclude that reassignment . . . must be considered and, if appropriate, offered if the employee is unable to perform his or her existing job."); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 498 (7th Cir. 1996)("the ADA may require an employer to reassign a disabled employee to a different position."); *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173 1187 (6th Cir. 1996)("employer may be required as a reasonable accommodation, to transfer an employee to a vacant position for which he or she is qualified."). Finally, the Third

Circuit has held that when an employee proves there is an open position that he or she could perform, "the employer must demonstrate that transferring the employee would cause unreasonable hardship." *Williams v. Phila. Housing Authority*, 380 F.3d 751, 770 (3d Cir. 2004).

Based on these principles, the Court should find that the NJLAD requires employers to give employees on leave due to a disability their job back if the position is still open when they are cleared to return to work. Here, Boles was still being paid and was still a Wal-Mart employee when Dr. Mautner cleared him to return to work. His position was still open. Finally, there is no evidence that placing Boles in his open position would impose any kind of burden on Wal-Mart. Accordingly, the court should find that Wal-Mart failed to reasonably accommodate Boles in violation of the NJLAD and grant Plaintiff's motion for Summary Judgment on Count III of the Amended Complaint.

C. **Wal-Mart Failed to Engage in the Interactive Process**

Even though Boles received paid leave from Wal-Mart through October 24, 2011, he was terminated for not returning to work by September 30, 2011. Wal-Mart clearly failed to engage in the "interactive process."

Under the NJLAD, upon receiving a request for accommodation from a disabled employee, employers are required

to engage in an "interactive process" of discussing the employee's requested accommodation.   During the interactive process, "both employer and employee bear responsibility for communicating with one another to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Jones v. Aluminum Shapes, Inc.* 339 N.J.Super. 412, 422 (App. Div. 2001) *quoting Smith v. Midland Brake, supra,* 180 F.3d at 1171.

Wal-Mart's HRSS group was responsible for making leave determinations. The local market Human Resources manager did not contact HRSS regarding Boles' need for medical leave until July 2011.  Wal-Mart requested and Boles provided supplemental leave paperwork on and the certification of Dr. Mautner or about July 26, 2011. There is no dispute that Wal-Mart understood that Boles requested leave through November 2011.  The Market Human Resource's Manager's e-mail to HRSS on July 28, 2011 stated: "I faxed him a new set of LOA paperwork, this time he filled them out correctly. **The paperwork said that he needed to be out until November 2011.**" (McDonald Dep. Ex. L)(emphasis added). Shonda Brown, the HRSS manager who processed Boles' leave request acknowledged that Boles requested leave through November 2011.  She testified:

Q.  . . . the request for leave was through November, correct?

A.  Correct.

Q.  You did not grant or Wal-Mart did not grant the request for leave through November; is that fair?

A.  Correct.  (Brown Dep. 39:9-15)

Despite knowing that Boles requested leave through November, 2011, Wal-Mart only approved leave through September 29, 2011. Moreover, no one from HRSS attempted to discuss the leave request with Boles or Dr. Mautner.  Brown's only explanation for not doing so was that it would be too much of a burden for Wal-Mart to discuss leave requests directly with employees.

Q.  After HRSS received McDonald K, do you know if anyone from HRSS contacted Mr. Boles to discuss whether he needed additional leave beyond September 29 and the reasons why that was not going to be provided?

A.  That's not in our normal practice.  Just to give you an explanation, we supported the entire Realty Division and the entire Field Management, so think about how many stores we have in the US.  It would be impossible to call every associate that applied, this is why you didn't get additional time.  That's why the designation is provided.  (Brown Dep. 45:24-46:10).

In *Taylor v. Phoenixville School District*, 184 F.3d 296 (3d Cir. 1999), the Third Circuit set forth the test for determining whether an employer failed to engage in the "interactive process." To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her

12

disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of bad faith. *Id.* at 319-320.

Here, Wal-Mart knew about Boles' disability. Dr. Mautner certified Boles' need for leave through November 2011. Despite Boles' request, Wal-Mart only granted leave through September 29, 2011. No one from Wal-Mart attempted to discuss Boles' need for leave beyond September 29, 2011. Finally, Wal-Mart certainly could have granted Boles unpaid leave for a few additional weeks. As it turned out, he effectively received paid leave through October 24, 2011. Under the circumstances, Wal-Mart has not even alleged and simply cannot prove that it was unable to provide Boles an additional three weeks of leave. Notably, other courts have found in the past that Wal-mart was capable for accommodating leave of up to a year. *See Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1234, 1247 (1999)("[Plaintiff] went out on medical leave with the blessing of Wal-Mart, whose stated benefits policy included unpaid medical leave of up to a year.").

In considering Plaintiff's cross motion for summary judgment, *Potente v. County of Hudson*, 187 N.J. 103 (2006) is instructive. The case involved an investigator in the Hudson

County Prosecutor's office who requested medical leave for shoulder surgery. Potente went out on sick leave on September 20, 1994 and when his sick time ran out, he requested additional leave. Hudson County denied Potente's request for leave because it was "unspecified." Potente attempted to contact the officials in the Prosecutor's Office and claimed that no one was willing to discuss his request for leave. Potente was terminated on December 7, 1994.

At trial, the Law Division granted a directed verdict on Potente's failure to accommodate claim under the NJLAD. The New Jersey Supreme Court ultimately reversed, finding that there was evidence that Hudson County officials attempted to schedule a meeting with Potente to discuss his request for additional leave. *Id.* at 111. Under the circumstances, the Supreme Court found that the jury should have been allowed to determine "whether defendant was willing to discuss accommodating plaintiff." *Ibid.*

Here, there is no evidence that Wal-Mart made any attempt to discuss Boles' need for leave beyond September 29, 2011. In fact, Wal-mart's corporate representative testified that HRSS does not contact Wal-Mart employees to discuss their requests for leave. (Brown Dep. 45:24-46:10). Moreover, Wal-Mart's Market Human Resources representative testified that he did not

call Boles regarding his leave. (McDonald Dep. 172:14-25).
Finally, in its answers to interrogatories, Wal-Mart could not
identify a single attempt to communicate with Boles after July
5, 2011. (McDonald Dep. Ex. 2, p. 5).[1]   Accordingly, since the
evidence clearly shows that Wal-Mart made no attempt to engage
in the "interactive process," the Court should grant Plaintiff's
motion for summary judgment on Count III of the Amended
Complaint.

**D. <u>At the Very Least, There are Disputed Issues of Fact and
Defendant is Not Entitled to Summary Judgment</u>**

As discussed above, it is our contention that Boles is
entitled to summary judgment on his failure to accommodate
claim.  If the court finds that Plaintiff is not entitled to
summary judgment, it is clear that there are sufficient disputes
of fact for his failure to accommodate claim to go to a jury.
Boles submitted a certification from Dr. Mautner asserting that
all he needed was an additional three weeks of leave.  Wal-Mart
was aware that Dr. Mautner had certified that Boles needed leave
through November.  Wal-Mart has offered no explanation for only
granting leave through September 29, 2011.  Moreover, Wal-Mart

---

[1] In response to Plaintiff's Request that Wal-Mart identify all
attempts to communicate with Plaintiff while he was on leave,
Wal-Mart stated: "Some, but not all, of those attempts to
contact Plaintiff occurred on May 8, 2011, May 12, 2011, May 18,
2011, June 14, 2011, June 15, 2011, June 22, 2011, June 23,
2011, June 24, 2011, July 1, 2011, July 2, 2011 and July 5,
2011."

has not identified any costs that it would have incurred from returning Boles to his position when Dr. Mautner cleared him to return to work.   At the very least, there is a legitimate dispute regarding whether Wal-Mart made a good faith effort to consider Boles' request for leave beyond September 29, 2011. *See Linton, supra,* 2009 WL 838766 at *7 ("both parties had a good faith duty to assist in the search for the reasonable extension of [plaintiff's leave] should that become necessary.").   Accordingly, the Court should not grant Defendant's motion for summary judgment.

## II. Boles Has Evidence of Pretext on His Claims of Disability Discrimination and Retaliation

Plaintiff has sufficient evidence of pretext on his disability discrimination and retaliation for the court to deny Wal-Mart's motion for summary judgment.   Disability discrimination claims under the NJLAD are analyzed under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792 (1973). *See Erickson v. Marsh & McLennan Co.,* 117 N.J. 539 (1990).   If the claim is based upon discriminatory discharge, a plaintiff must demonstrate: (1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for

that job. *Clowes v. Terminix Int'l, Inc.,* 109 N.J. 575, 596-97 (1988).  To establish a prima facie case of retaliation under the NJLAD, a plaintiff must show that: (1) he was engaged in a protected activity known to the defendant; (2) he was subjected to an adverse employment action by the defendant; and (3) there was a causal link between the two. *Romano v. Brown & Williamson Tobacco Corp.,* 284 *N.J.Super.* 543, 548-49 (App.Div. 1995).

Once the employer produces evidence of a legitimate reason for the discharge, the burden shifts back to plaintiff to prove that the employer's reasons were a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)  The U.S. Supreme Court sated in *Hicks*:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, **rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, . . . no additional proof of discrimination is required** .. .

*Id.* at 511 (emphasis added).  Accordingly, summary judgment is inappropriate where the plaintiff submits evidence that would "allow a factfinder to reasonably infer" that the employer's articulated, nondiscriminatory reason "was either a post hoc fabrication or otherwise did not actually motivate the

employment action . . " *Fuentes v. Perskie,* 32 *F.3d* 759, 764 (3d Cir. 1994).

Here, Boles can show that he had a disability and/or that he requested accommodation. He was qualified to perform the job as there is no allegation that he was terminated for poor performance.  He was terminated and Wal-Mart gave his job to another, non-disabled individual.  Accordingly, the only issue before the court is whether Boles has sufficient evidence of pretext.

Wal-Mart has cited this court's unreported decision in *Wagoner v. Medco Health Solutions, Inc.*, 2009 WL 749572 (D.N.J. March 18, 2009) for the principle that an employee's request for and receipt/of accommodation cannot support a retaliation claim. In *Wagoner,* this court found that an employee must make a complaint of disability discrimination to be protected from retaliation under the NJLAD.

Notably, the NJLAD's retaliation language is essentially identical to the anti-retaliation language in the ADA.  The District of Columbia Circuit recently addressed this issue in the context of the ADA and found that requesting and receiving an accommodation is an activity that is protected from retaliation. *See Floyd v. Lee*, 2013 WL 5429265 (D.C.Cir. Sept. 30, 2013).  The D.C. Circuit also found that every circuit to

18

address the issue has held that a request for accommodation can support a retaliation claim. *Id.* at *16.* ("many circuits—including the Eighth—have said that the ADA provides for such a claim, and no circuit has held the contrary.")   New Jersey courts typically interpret the NJLAD in accordance with federal discrimination laws. *See Grigoletti*, *supra*.   Accordingly, this court should assume that New Jersey courts will inevitably construe the anti-retaliation provisions in the NJLAD consistent opinions of every Court of Appeals to consider the anti-retaliation provisions of the ADA.

## A. **Wal-mart's Explanation Defies Common Sense**

Wal-Mart claims that it terminated Boles for "job abandonment."  However, the evidence is indisputable that he was only terminated after was cleared to return to work by his doctor and he actually attempted to report for duty. Boles was on approved leave.  He was giving his Human Resources Manager updates on his status via voice-mail and text.  When his doctor cleared him to return to work, he attempted to return. Moreover, Boles returned willingly and without having received any warning or threat of discharge or discipline for staying out too long. Clearly, these are not the actions of an employee who is "abandoning" his job.  Finally, Boles's employment was not terminated until he attempted to return thus raising the inference that it was not Boles' absence that Wal-Mart found

objectionable, but that it was the return of an employee with a disability that they found objectionable. *See Wagoner v. Medco*, 2009 WL 749572, *4 (D.N.J. March 18, 2009)("timing of [employer's] decision . . . is sufficient to render [employer's] legitimate nondiscriminatory reason non-credible when examined in the light most favorable to [Plaintiff].")

A jury could reasonably find that there is no evidence that Boles abandoned his job and that Wal-Mart's stated reason for terminating him is unworthy of belief. The jury could reasonably find that it is more likely that Wal-Mart terminated Boles due to his disability or in retaliation for taking leave. Accordingly, the Court should deny Defendant's motion for summary judgment.

### B. Boles Has Evidence of Discriminatory Animus

Boles has evidence that his store manager Mike Ciechalski wanted to terminate him for going out on leave. Ciechalski's initial e-mail to McDonald regarding Boles' request for leave on May 10, 2011 appeared to indicate that he was unhappy that Boles was not working. (Weisbrot Cert. Ex. I). Later, when McDonald copied Ciechalski on his correspondence with HRSS regarding Boles' leave, Ciechalski showed additional bias when he stated: "Can I ask why we are not terminating at this time." (McDonald Dep Ex. P). McDonald responded by stating: "Terminating Barry

would be a violation of company policy." (McDonald Dep. Ex. P). Since Boles had not done anything during this period except stay out of work on medical leave, a jury could reasonably find that this statement by Ciechalski wanted to terminate Boles due to his disability and/or his absence from work. Notably, Ciechalski participated in the decision to terminate Boles' employment. (McDonald Dep. Ex. B, p.6). Based on the odd circumstances of Boles' termination and this evidence of discriminatory/retaliatory animus, a jury could reasonably find that Wal-Mart terminated Boles due to his disability and/or because he went on leave. Accordingly, the Court should deny Wal-Mart's motion for summary judgment.

### C. A Reasonable Fact-Finder Has Already Rejected Wal-Mart's Claim that Boles Abandoned His Job

A reasonable fact-finder, namely New Jersey's Unemployment Appeal Tribunal has already heard and rejected Wal-Mart's claim that Boles abandoned his job. Following the termination of his employment, Boles filed for unemployment. Wal-Mart contested his claim to unemployment and the matter went to a hearing before the New Jersey Unemployment Appeals Tribunal. At the hearing, Wal-Mart presented witnesses and was represented by the same attorney representing Wal-Mart in this action. The issue before the Appeals Tribunal, whether Boles left his job voluntarily without good cause attributable to the work or

otherwise engaged in misconduct, is essentially the same issue that the jury will consider in this case. The Appeal Tribunal found that Boles had not abandoned his job and that he had not engaged in misconduct and it awarded him unemployment benefits. In the case of *Gibbs v. Caswell-Massey*, 2011 WL 4974727 (App. Div. Oct. 20, 2011) the New Jersey Appellate Division found that the unemployment Appeal Tribunal is comparable to a reasonable juror and its rejection of the employer's non-discriminatory reason for termination justifies denial of a motion for summary judgment motion. The Appellate Division stated:

> We instead view the Appeals Tribunal as an exemplar of a rational decision-maker akin to—but obviously not the equivalent of—a reasonable juror. Even recognizing the difference between the quantum of evidence presented at the administrative hearing and that contained within the summary judgment record, we cannot discount the logical force of the argument that if the Appeals Tribunal either did not believe or discounted Caswell-Massey's proof of its reason for firing Gibbs—even if that conclusion was truncated and attenuated due to the constraints of the agency's procedures—so might an objective, rational trier of fact in the Law Division. Consequently, we find that summary judgment was improvidently granted on Gibbs's LAD claim.

Since the Wal-Mart's proffered explanation has already been tested and rejected by a reasonable fact-finder, the Court should deny Defendant's motion for summary judgment.

### III.   Wal-Mart Interfered with Boles' FMLA Rights by Failing to Properly Advise Him When His Leave Would Expire

The FMLA regulations provide that employers must issue a notice of eligibility within five (5) days of receiving a request for leave, and a notice designating leave as FMLA-protected within five (5) days of receipt of a certification from an employee's health care provider.   29 C.F.R. §825.300. Under previous DOL regulations, the failure to properly advise an employee of the date their FMLA leave would expire was a per se violation of the FMLA.   Accordingly, employers could not designate FMLA leave retroactively.   The U.S. Supreme Court found in Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002) that the DOL's regulations were inconsistent with the FMLA paving the way for employers to retroactively designate FMLA leave.   However, the Supreme Court left the door open for a determination whether, in individual cases, an employee was prejudiced by the employer's failure to timely and accurately inform an employee about his leave. The Supreme Court directed courts to: "ask what steps the employee would have taken had circumstances been different—considering, for example, when the employee would have returned to work after taking leave." *Id.* at 91.

Subsequently, the DOL amended its regulations and 29 C.F.R. §825.301(d) now provides:

> [i]f an employer does not designate leave as required
> by §825.300, the employer may retroactively designate
> leave as FMLA leavge with appropriate notice to the
> employee as required by §825.300 **provided that the
> employer's failure to timely designate leave does not
> cause harm or injury to the employee.** (emphasis
> added).

Here, there is no dispute that Wal-Mart failed to designate Boles' leave in a timely manner. Boles first gave notice of his need for leave on May 10, 2011. He then submitted an FMLA certification from Dr. Mautner on May 24, 2011. Wal-Mart did not even generate a Notice of Eligibility until July 15, 2011 and did not generate a Notice of Designation until August 18, 2011. Moreover, Boles testifies that he never received either of these notices from Wal-Mart. Even if he received it, the Wal-Mart's Notice of Designation did not clearly inform Boles when his FMLA leave expired and when he had to return in order to be entitled to receive his job back. Notably, the Notice of Designation stated that his FMLA leave was approved and that **"All leave taken for this reason will be designated as FMLA leave."** (McDonald Dep. Ex. O)(emphasis added). The only hint that Boles' ability to return to his job may be in jeopardy is that a box at the bottom of the form is checked indicating that Boles FMLA leave has been exhausted and in fine print under type of leave approved, the form states "5/09/2011-7/31/11-FMLA-SHC-Paid." *Id.*

This is not a case where Boles was totally disabled and he could not return in some capacity.  Dr. Mautner recommended that he avoid physical activity to maximize his healing.  Had Boles understood that his job was at stake, he would have taken greater risks with his health and would have explored returning to work light duty and would have done his best to work full duty if that was his only option. (Boles Cert. ¶¶ 17-19).  Notably, Wal-Mart also takes the position in their summary judgment brief that Boles could have returned to work light duty and faults him for not seeking light duty work.

> His doctor testified that, during this period, he could have returned to work, as long as he kept his leg elevated and avoided serious physical activity. Neither Boles nor his doctor ever advised Defendant of those facts  . . . (Def's Moving Brief, p. 1)

Other courts that have addressed the retroactive designation of FMLA have granted summary judgment only where it was clear that the employee could not return to work within the protected FMLA period and have found "if there is a factual dispute over the employee's ability to return to work, summary judgment is inappropriate." *Haitz v. Don Jacobs Imports, Inc.,* 2011 WL 4743384 (E.D.Ky. Oct. 6 2011)(finding summary judgment inappropriate where employee submitted affidavit stating "that if he knew his job was in jeopardy, he would have returned to work.") *Also see Shepherd v. Honda of America Mfg., Inc.,* 160 F.Supp.2d 860 (S.D.Ohio 2001).

Here, a jury could reasonably find that Wal-Mart's failure to timely and clearly notify Boles that his job would no longer be protected after July 31, 2011, interfered with Boles' ability to explore alternative accommodations such as light duty or take his chances in returning to work full duty because he needed his job to support his family. Accordingly, the Court should deny Wal-Mart's motion for summary judgment.

## IV.  Wal-Mart's Distortions of the Law and Facts

It is typical for opposing parties to have different versions of events and different interpretations of the same laws and cases.  What is atypical is for the parties to be so far apart as to apparently reside in different realities.  It is especially odd to see a party's argument to the court depart completely from its own documents and the testimony of its own witnesses.  Wal-Mart has gone to great length to attempt to convince this court that Boles, a man that worked so diligently and well for Wal-Mart that he was promoted nearly every year, inexplicably chose to throw away his career by completely disappearing for six (6) months for a minor blister.  In doing so, Wal-Mart has completely departed from the facts and created a work of legal fiction worthy of John Grisham.  Here are the some of the most egregious ways Wal-Mart tried to hoodwink the Court.

As discussed above, Wal-Mart cited *Conoshenti* for the principle that medical leave is not a reasonable accommodation under the NJLAD. A modicum of legal research reveals that the *Conoshenti* is no longer good law, because the regulation the Third Circuit relied upon was changed in direct response to the decision in *Conoshenti. See Santiago, supra.* Either Wal-Mart's counsel is incompetent or they deliberately sought to deceive the court regarding the current state of the law.

Wal-Mart claims that Boles was terminated <u>before</u> he attempted to return to work. In its statement of facts, Wal-Mart claims: "[n]early one month passed and Wal-Mart could not locate Plaintiff" and that "On October 25, 2011, Plaintiff's employment was terminated on the grounds that he had abandoned his job." (Def's Statement of Facts ¶¶52-53). In its moving brief, Wal-Mart stated: "Suddenly, the week he was terminated for job abandonment, his mysterious "blister" suddenly healed and he was able to return to the store. Unfortunately, by that time, he had already been terminated . . ."(Def's moving brief p. 1). However, the record is clear that Boles attempted to return <u>before</u> he was terminated. HR Manager, Quawad McDonald confirmed that Boles attempted to return. (McDonald Dep. 148:6-17). McDonald testified:

27

Q. Understood.  Were you ever told by anyone that Barry had tried to come to work on October 24th or 25th of 2011.

A. After he left the building, yes.

Q. So he tried to report to work –

A. I wasn't there personally.

Q. Understood.  Someone told you that he came to work, yes?

A. Said that Barry entered the building, yes.

Q. Who told you that?

A. Mike Ceichalski.

The letter terminating Boles was dated October 27, 2011, <u>three days after</u> Boles attempted to return to work.  Moreover, Wal-Mart's payroll records show Boles' pay continued uninterrupted through October. (McDonald Dep. Ex. Q).   Thus, Wal-Mart's statements that it could not locate Boles and he had already been terminated before he attempted to return are fantasy.

Notably, Wal-Mart directly contradicts itself in its own statement of facts.  At paragraph 40, Wal-Mart claims that after Boles received FMLA paperwork in mid-May 2011, he "continued to stay out of work and <u>never actually submitted anything</u> to Walmart until July 27, 2011 after his pay was suspended." Apparently recognizing that it could never get completely away with this statement, Wal-Mart concedes at paragraph 42 that "prior thereto, the only information received to date was a May 24, 2011 "Certification of Healthcare Provider" that Wal-mart

28

claimed it "could not process."   Clearly, Wal-Mart's own concession proves its prior statement that Boles "never actually submitted anything" is false.   Moreover, Brown never testified that the certification could not be processed. In fact, she testified that the certification did not need to be complete to issue a "Notice of Eligibility" but that it would need to be complete to issue a "Notice of Designation. (Brown Dep. 33:19-25).

Finally, Wal-Mart claims in its statement of facts that when Boles failed to show up at the expiration of his leave, it "began investigating Plaintiff's whereabouts" and that "it began placing numerous phone calls in an attempt to reach him," but "nearly one month passed and "Walmart could not locate Plaintiff." (Def's Statement of Facts, ¶¶ 50-52).   To support these facts, Wal-Mart cites three pages of Quawad McDonald's deposition – 117:14-119:25.   However, those pages contain no testimony about any investigation or any calls by Wal-Mart. They only contain a discussion of McDonald's belief that Boles said he could return on September 10th.   Here is the actual testimony from those pages:

> Q. Do you recall there being an issue then later on in Jully regarding an extension of the leave?
>
> A. I can't recall.   There's a lot of leaves, and for me to recall this particular one, what I can tell you is Barry Boles had a return to work date September 10.

Barry did not show up.  Then it was extended again to
I believe either the 28th or the 29th, and he still did
not show up.

Q.  Right now you don't recall whether or not there
was an issue in July with him having to seek an
extension of the leave?

A. It spanned from May to September.  That's the only—
well, actually to, if you think about it, the end of
the month September, so he had an agreed upon date,
the tenth of September, did not return then. No call.
No anything.

Q. How do you know with specificity that he had a
return to work date of September 10?

A. Because that was the finalized agreed upon date.
There's been throughout this entire LOA there was this
date, that date. I would certainly need to be off.  I
can't come in on this day, on that day.  September 10
was the date where it was, hey, everything is all
fine.  I'm ready.  Thank you for letting me be, you
know, out this time, but this is the time frame that
I'm coming back.  I'm ready.  I told the whole team.
Hey, this is all going to, you know, take place.  So
why do I recall that date?  Because that was finalized
out of whatever was asked of in terms of I can't come
in, can I, you know , extend to this date.  I was
certain to be out for three extra weeks and two weeks
here.  This is when  --

Mr. Weisbrot: I need a break in three minutes.

A. So that's the reason why that date over the many
other dates because each of the previous dates was I
can't come in on that day.  I would need to get
paperwork.  Doctor told me this, but this particular
date was the time where look, everything is fine.  I'm
ready to, you know, go, and within that thought
process is we were encouraged to have him come back
because we put in a lot of time, a lot of efforts, and
a lot of finances to make sure that this assistant
manager becomes successful.

Q. So, you recall there were various extensions to his
leave, but sitting here today as of right now your
understanding was he was supposed to return on
September 10, is that correct?

A. He was supposed to return.

Q. And he had agreed on that? He hadn't requested additional time beyond September 10?

A. The only thing that I could tell you first off foremost is that date was the date. He did extend that, but this is the "I'm coming back," and this is the finalized . . .

No reasonable person reading these pages could possibly conclude that they say that Wal-Mart "began investigating" or made "numerous phone calls" following the expiration of Boles' leave. Either Wal-Mart's counsel incorrectly cited this testimony in three separate times in three separate paragraphs by mistake, or, more likely, they deliberately made up facts and added a blaket cite to several pages of testimony in the hope that the Court would not bother to actually read the testimony.

These are just some of the most egregious of Wal-Mart's distortions of the record and misstatements of law and fact. The numerous other lesser distortions are addressed in detail in Plaintiff's Specific Responses to Defendant's Statements of Material Fact. However, it should be clear that Wal-Mart's characterizations of the law and facts in its moving papers simply are not reliable.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant Plaintiff summary judgment on Count III of the Complaint and deny Defendant's Motion for Summary Judgment.

> Colin M. Page & Associates
> Attorneys for Plaintiff
>
>
> _____
> Colin M. Page, Esq.

Dated:  January 15, 2014