**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

BARRY BOLES,

             Plaintiff,

v.

WAL-MART STORES, INC.

             Defendant.

Civil Action No. 12-1762 (JLL)

**OPINION**

**LINARES,** District Judge.

This matter comes before the Court by way of Defendant Wal-Mart Stores, Inc. ("Defendant or Wal-mart")'s motion for summary judgment, and Plaintiff Barry Boles ("Plaintiff" or "Boles")'s cross-motion for partial summary judgment. The Court has considered the submissions made in support of, and in opposition to, each party's respective motion, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Plaintiff's cross-motion is denied.

## I.   FACTUAL BACKGROUND[1]

    A.   <u>General Background</u>

---

[1] Only those facts the Court deems relevant to resolving the instant motions for summary judgment are set forth herein. Unless otherwise noted, the Court considers these facts to be undisputed. Additionally, any statement that is not specifically denied with a proper citation to the record in a responsive Rule 56.1 statement is considered to be admitted. *See* Loc. Civ. R. 56.1. Finally, the Court will disregard all legal arguments included in any Rule 56.1 statement, including evidentiary objections to the Court's consideration of certain facts. *See* Loc. Civ. R. 56.1 (noting that Rule 56.1 statements "*shall not* contain legal argument or conclusions of law.") (emphasis added).

This action stems from Plaintiff's claims of workplace discrimination resulting from his termination of employment following a medical leave of absence. In or about 2001, Wal-mart employed Plaintiff as a backroom associate at a store located in Linden, New Jersey. (Def. Statement of Undisputed Material Facts ("Def. SUMF") at ¶ 6.) Throughout the course of his employment, Plaintiff worked in various departments and was eventually transferred to a Wal-mart store located in Quincy, Florida where he was promoted to support manager. (*Id.* at ¶¶ 7, 8.)

In 2010, Plaintiff was transferred back to the Linden, New Jersey location where he commenced his training to become an Assistant Manager. (*Id.* at ¶ 9.) In or about February 2011, Plaintiff received another promotion, and assumed the position of overnight assistant manager at a Wal-mart store in Union, New Jersey. (*Id.* at ¶ 10.) As an overnight assistant manager, Plaintiff's responsibilities included ensuring that the store was ready for opening each morning. (*Id.* at ¶ 11.)

B.     Plaintiff's Job Performance

Based on the record before the Court, it is apparent that Plaintiff's job performance was satisfactory at least through 2011. Indeed, it is undisputed that he received multiple promotions, (*see* Def. SUMF at ¶¶ 8-10), and received various performance-based awards, (*see* Pl. Supplemental Statement of Undisputed Material Facts ("Pl. Supp. SUMF") at ¶¶ 4, 7.)

Shortly after Plaintiff began working at the Wal-mart store in Union, he asked his direct supervisor, Michael Ciechalski ("Ciechalski"), for permission to take a one-week vacation in June 2011. (Def. SUMF at ¶ 12.) Ciechalski denied Plaintiff's request because three other assistant managers had already been pre-approved for vacations during this time. (*Id.* at ¶ 13.) According to Defendant, Plaintiff's job performance became noticeably deficient following the

2

denial of his request for vacation.  (*Id.* at ¶ 14.)  Consequently, Plaintiff received a written

reprimand (i.e., a Coaching Report) on or about April 25, 2011.  (*Id.* at ¶ 15.)

The Coaching Report describes various deficiencies in Plaintiff's performance.  It states:

> On April 23, 2011, the store was not properly zoned, the back
> room was neither cleaned nor organized and sixty-nine pallets
> were on the floor.  Signage was not properly executed and the floor
> conditions were poor.  In overall [sic], the store was not ready for
> morning business and up to company standards and expectations
> …This is not acceptable…On April 4, 2011 and April 22, 2011,
> you were given specific notes detailing what tasks needed to be
> completed by the end of the shift.[2]

(Weisbrot Cert., Ex. G.)  The Coaching Report also admonished Plaintiff for failing "to provide

the necessary leadership to teach, coach, and train his associates," and advised him to "take the

necessary steps to improve on his job performance."  (*Id.*)  Furthermore, it warned him that

"[t]he next level of action if [his] behavior continue[d] could include termination."  (*Id.*)

Defendant claims that on April 29, 2011, four days after receiving the Coaching Report,

Plaintiff walked out of his duty location without receiving authorization or notifying either of his

shift managers.  (Def. SUMF. at ¶ 20.)  In an email dated April 29, 2011, Ciechalski notified

Market Human Resources Manager Quwad McDonald ("McDonald") that Plaintiff had left work

without either notifying any of the shift managers, or completing his overnight responsibilities.

(*Id.* at ¶ 21.)  During his deposition, Plaintiff denied having left work, and further denied having

failed to complete his assigned tasks.  (Pl. Resp. SUMF at ¶ 20.)

C.   <u>Wal-mart's Federal Medical Leave Act and Personal Leave of Absence Policies</u>

Wal-mart maintains a Family Medical Leave Act ("FMLA") policy which grants eligible

employees up to twelve weeks of unpaid, job-protected leave each year for specified family and

---

[2] During his deposition, Plaintiff testified that the statements contained in the Coaching Report were not true.  (*See, e.g.,* Pl. Responsive Statement of Undisputed Material Facts ("Pl. Resp. SUMF") at ¶¶ 14-18.)  There is no dispute, however, that Plaintiff received the Coaching Report and refused to sign it.  (*See* Pl. Resp. SUMF at ¶ 19.)

medical reasons. (Def. SUMF at ¶ 28.) Employees seeking to use FMLA leave are required to provide: (1) thirty-days notice of the need to take FMLA leave when the need is foreseeable; (2) medical certifications supporting the need for leave due to a serious health condition affecting the employee or an immediate member of his/her family; and (3) periodic reports during FMLA leave regarding the employee's status and intent to return to work. (*Id.* at ¶ 29.)[3] Upon return from FMLA leave, an employee must be restored to his or her original job, or to an equivalent job with equivalent pay, benefits, and other employment terms and conditions. (*Id.* at ¶ 30.)

In addition to the FMLA policy, Wal-mart also maintains a Personal Leave of Absence (PLOA) policy, which allows an employee to take leave for any special circumstance that does not qualify for leave under any other federal or state law. (*Id.* at ¶ 31.) The PLOA policy requires employees seeking to extend their leave beyond the time initially requested to submit another Request for Leave Form and a new Certification Form to a human resources representative. (*Id.* at ¶ 32.)

There is no dispute that Wal-mart's policy is to provide employees requesting FMLA leave both a Notice of Eligibility and a Notice of Designation within five days of the leave request. (Def. SUMF at ¶¶ 33-34.) The Notice of Eligibility notifies employees of their general eligibility for leave, and the Notice of Designation advises employees whether they have been approved for FMLA leave and how much FMLA time will be used while they are on leave. (*Id.*)

D.  Plaintiff's Medical Issue and His Leave of Absence

On or about May 8, 2011, Plaintiff's wife noticed a large blister on Plaintiff's lower leg. (Pl. Supp. SUMF at ¶ 11.) Plaintiff then went to the emergency room to obtain treatment. (*Id.* at

---

[3] In his responsive Rule 56.1 statement, Plaintiff disputes the accuracy of Defendant's representation of what is required of employees under Wal-mart's FMLA and personal leave of absence policy without a proper citation to the record in violation of Local Civil Rule 56.1. Accordingly, the Court deems Defendant's assertion in Paragraph 29 of its Rule 56.1 statement to be undisputed. *See* Loc. Civ. R. 56.1.

¶ 12.)  The emergency room physician advised Plaintiff to seek further treatment from his own physician, as he did not know what caused the blister.  (*Id.* at ¶ 13.)  The emergency room physician also gave Plaintiff a note stating that he could return to work in two days.  (*See id.* at ¶ 14; Def. Resp. to Pl. Supp. SUMF at ¶ 14.)

On May 9, 2011, Plaintiff visited Dr. Gail Mautner ("Dr. Mautner") a board-certified dermatologist.  (Pl. Supp. SUMF at ¶ 15.)  During the visit, Dr. Mautner observed a large blister on Plaintiff's lower leg, and punctured it.  (*Id.* at ¶ 16.)  This resulted in a large ulceration on Plaintiff's leg.  (*Id.*)  During her deposition, Dr. Mautner testified that she considered Plaintiff's condition to be dangerous because wounds on the lower leg are known to heal poorly due to lack of circulation, and such wounds are vulnerable to infection and necrosis.  (*Id.* at ¶ 17.)

On May 10, 2011, Plaintiff's wife sent a fax to Ciechalski enclosing a discharge summary from the emergency room stating that Plaintiff had been treated on May 8, 2011, and that he could return to work in two days.  (Def. SUMF at ¶ 25.)  The fax also enclosed a note from Dr. Mautner, stating that she had seen Plaintiff on May 9, 2011 and that he could return to work on May 21, 2011.  (*Id.* at ¶ 26.)

On the same date that Plaintiff's wife sent the fax to Ciechalski (May 10, 2011), Ciechalski sent an email to McDonald to inform him that Plaintiff had not reported to work in two days without notifying any of his supervisors.  (*Id.* at ¶ 22.)  In that email, Ciechalski informed McDonald that two days prior, an assistant manager had called Plaintiff to inquire about his whereabouts.  (*Id.* at ¶ 23.)  In relevant part, Ciechalski's email states:

> I just wanted to bring to your attention that Barry [i.e., Plaintiff] has not been to work the past 2 days.  On Sunday, ASM Bob called him to see why he was running late.  He informed Bob he wasn't coming to work due to some blisters he had on his person.  I was not aware of this…Last night he never called a member of management but text [sic] a Support Manager telling them [sic] he

5

would be out for 2 weeks.  We just received paperwork.  One page came from the Emergency Room saying he could return to work in 2 day's [sic].  A 2nd note came from the Dermatologist / Cosmetic Surgery Office saying he needed to be out until the 21st. . . .One note.  Saturday into Sunday he and Jarreaux had another terrible performance and he [i.e., Plaintiff] told one of the Support Managers he wanted to make sure he could not be coached again.

(*Id.* at ¶¶ 23-24, quoting Weisbrot Cert., Ex. I.)[4]

On May 12, 2011, Defendant contacted Plaintiff and advised him that he would need to complete a Leave of Absence packet inasmuch as he was going to miss more than three days of work.  (*Id.* at ¶ 35.)  After Plaintiff informed Defendant that he would be unable to retrieve the packet, Defendant sent it to him via Federal Express.  (*Id.* at ¶ 36.)

On May 19, 2011, two days before Plaintiff's scheduled return to work in accordance with Dr. Mautner's note, Defendant reached out to Plaintiff to inquire about the status of his leave of absence paperwork.  (*Id.* at ¶ 38.)  Plaintiff informed Defendant that he had received the paperwork, and would submit it to the market office.  (*Id.* at ¶ 39.)

On May 20, 2011, Plaintiff visited Dr. Mautner again.  (Pl. Supp. SUMF at ¶ 29.)  On or about May 24, 2011, Dr. Mautner faxed a certification to Defendant in which she estimated that Plaintiff would not be able to return to work for one month.  (*See* McDonald Depo. Ex. H.) Defendant claims that it could not process Dr. Mautner's certification because, among other reasons, it was unsigned and did not have a specific return to work date.  (Def. Resp. to Pl. Supp. SUMF at ¶ 31.)  Furthermore, Defendant maintains that it did not send Plaintiff either a Notice of

---

[4] In his responsive Rule 56.1 statement, Plaintiff disputes these facts, but provides no citation to the record as required under Local Civil Rule 56.1.  Accordingly, the assertions in Paragraphs 22-24 of Defendant's Rule 56.1 statement are deemed admitted.  *See* Loc. Civ. R. 56.1.

Eligibility or Notice of Designation upon receiving Dr. Mautner's certification because said certification could not be processed. (*See id.* at ¶ 33.)[5]

Defendant did eventually generate a Notice of Eligibility on July 15, 2011. (*See* McDonald Depo. Ex. N.) Three days later, on July 18, 2011, Ciechalski wrote an email to McDonald inquiring why Plaintiff's employment could not be terminated "at this time." (McDonald Depo. Ex. P.) In response, McDonald stated that "[t]erminating [Plaintiff] would be a violation of company policy." (*Id.*)

Although there is a dispute both as to when Plaintiff properly submitted the leave paperwork to Defendant, and whether Defendant provided a timely Notice of Eligibility and Notice of Designation to Plaintiff, there is no dispute that Plaintiff submitted the leave paperwork to Defendant's satisfaction on July 27, 2011. (*Id.* at ¶ 40; Pl. Resp. SUMF at ¶ 42.) On this date, Plaintiff submitted to Defendant a request for leave from June 22 to September 10, 2011. (*See* Weisbrot Cert., Ex. Q.)[6] One day prior, on July 26, 2011, Dr. Mautner had also submitted a certification to Defendant stating that she expected Plaintiff to return to work in October/November 2011. (*See* McDonald Depo, Ex. K.)

Ultimately, Defendant retroactively approved FMLA leave from May 9, 2011 through July 31, 2011, and approved personal leave from August 1, 2011 through September 29, 2011. (Def. SUMF at ¶ 44; Pl. Resp. SUMF at ¶ 44.) According to Defendant's files, a Notice of Designation was generated on August 18, 2011. (Pl. Supp. SUMF at ¶ 59.) Plaintiff claims that he never received the Notice of Designation from Defendant, and Defendant does not dispute

---

[5] Defendant claims that it made repeated calls to Plaintiff regarding his failure to return the necessary paperwork, but that Plaintiff never returned any of its calls. (Def. Resp. to Pl. Supp. SUMF at ¶ 33.)

[6] Approximately two weeks prior, on or about July 13, 2011, Plaintiff submitted a request for personal leave without specifying a return to work date. (*See* Weisbrot, Ex. U.)

this fact with a proper citation to the record. (*Id.* at ¶ 60; Def. Resp. to Pl. Supp. SUMF at ¶ 60.) The Notice of Designation states that Plaintiff's leave is approved from May 9, 2011 through September 29, 2011, and that "[a]ll leave taken for this reason will be designated FMLA leave." (McDonald Depo. Ex. O.)  That same document, however, contains small text within a box entitled "Type of Leave Approved" stating the following:

> 05/09/2011—7/31/2011 – FMLA-SHC-Paid
> 08/01/2011—08/06/2011 – Personal-SHC-Paid
> 08/07/2011—09/29/2011 – Personal-SHC-Unpaid (MHRM's approval needed)
> Expected return to work date: 9/30/2011

(McDonald Depo., Ex. O.) Nowhere on the Notice of Designation is there any warning that Plaintiff's failure to return to work by September 30, 2011 would result in termination.  (Pl. Supp. SUMF at ¶ 67.)   Plaintiff denies being aware that his failure to return to work by September 30, 2011 could result in termination. (*Id.* at ¶ 68.)

Plaintiff claims that nobody from Wal-mart contacted him to discuss his need for leave through November 2011.  (Pl. Supp. SUMF at ¶ 58.)  Defendant, on the other hand, maintains that it endeavored to contact Plaintiff to no avail, in spite of the fact that it was under no obligation to do so.  (Def. Resp. to Pl. Supp. SUMF at ¶ 58.)

During her deposition, Dr. Mautner testified that Plaintiff's medical condition required "leg elevation" twenty-four hours a day.  (*See* Weisbrot Cert., Ex. X, Mautner Depo. Tr. at 61:19-20; 81:22-23.)  Plaintiff has acknowledged that he never asked Defendant to accommodate him and his injury.  (*See* Weisbrot Cert., Ex. F, Boles Depo. Tr. at 195:1-3.)  He has also acknowledged that he never informed Defendant that he could work with a reasonable accommodation because he claimed to have "never had a chance to talk to [Defendant]." (*Id.* at 196-97.)

8

F.     Plaintiff's Termination

Defendant claims that after Plaintiff failed to return to work on September 30, 2011, as scheduled, Defendant began investigating Plaintiff's whereabouts, and made various attempts to contact him.  (Def. SUMF at ¶¶ 50, 51; *see also* Weisbrot Cert., Ex. V, McDonald Depo. Tr. at 160.)    Defendant further maintains that nearly a month passed without successfully locating Plaintiff.  (*Id.* at ¶ 52.)

Plaintiff disputes Defendant's assertion that it was investigating, or was unaware of, his whereabouts.  (Pl. Resp. SUMF at ¶ 50.)  Specifically, Plaintiff maintains that Defendant knew that Dr. Mautner had certified his need for leave until November 2011 and points out that he sent McDonald a text message at some point in or around September 2011 stating that his physician had not yet cleared him to return to work, and suggesting that he might receive medical clearance in October 2011.  (Pl. Supp. SUMF at ¶ 75.)[7]

Plaintiff met with Dr. Mautner on October 17, 2011.  (Pl. Supp. SUMF at ¶ 78.)  Upon examining Plaintiff, Dr. Mautner found that his wound had finally closed and advised him that he could return to work in one week.    (*Id.* at ¶ 79.)  On October 24, 2011, Plaintiff reported to work, and attempted to begin his regular shift.  (*Id.* at ¶ 83.)[8]  When he reported to work, however, Plaintiff was unable to log into the Wal-mart computer system.  (*Id.* at ¶ 86.)  Plaintiff reported this problem to Ciechalski, who advised him that he would have to speak to McDonald, and that until he did so, he should go home.  (*Id.* at ¶ 87.)

---

[7] During his deposition, McDonald denied having received this text message.  (Def. Resp. to Pl. Supp. SUMF at ¶ 75.)

[8] As of this time, Plaintiff's position remained vacant and had not been filled.  (Pl. Supp. SUMF at ¶ 84.) Additionally, there is no dispute that Defendant continued to pay Plaintiff's salary through the end of October 2011. (*Id.* at ¶ 85.)

Plaintiff claims that in accordance with Ciechalski's instruction, he returned home and called the market office to obtain clarification on his return to work, but was not able to reach anyone. (*Id.* at ¶¶ 88-89.) On or about October 28, 2011, Plaintiff received a letter from Wal-mart dated October 27, 2011, notifying him that his employment had been terminated. (*Id.* at ¶ 90.) This letter states:

> This is notification of your termination from the company effective Tuesday, October 25, 2011 for failure to return from LOA before expiration. LOA time requested was extended on multiple occasions due to your unique circumstances. Walmart understands when family and medical issues necessitate time away from work, however, you are responsible to meet eligibility requirements each time you take FMLA leave regarding submission of medical paperwork. This action was considered as per the administration of rules and regulations governing Walmart's FMLA policy.

(Weisbrot Cert., Ex. W.)

Plaintiff maintains that if he had known that his failure to return to work by September 30, 2011 would result in his termination, he would have explored alternatives to return to work earlier for the sake of keeping his job. (*See* Pl. Supp. SUMF at ¶¶ 105-08.)

## II.   PROCEDURAL BACKGROUND

On or about February 3, 2012, Plaintiff filed a three-count complaint in state court, which Defendant removed to this Court on or about March 21, 2012. (CM/ECF No. 1.) On March 12, 2013, Plaintiff filed an amended complaint asserting the following claims: (1) retaliation for requesting and taking extended medical leave in violation of the New Jersey Law Against Discrimination ("NJLAD"); (2) disability discrimination in violation of the NJLAD; (3) failure to provide a reasonable accommodation by failing to provide an extension to Plaintiff's leave, and failing to engage in the interactive process in violation of the NJLAD; and (4) interference

with FMLA rights on account of Defendant's failure to inform Plaintiff of his FMLA rights, the manner in which his leave would be calculated, and when his leave would expire.

On December 15, 2013, Defendant moved for summary judgment as to all counts in Plaintiff's amended complaint. On January 15, 2014, Plaintiff filed a response to Defendant's motion, and cross-moved for summary judgment as to his failure to accommodate claim. On January 30, 2014, Defendant filed a reply brief.

### III.   JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

### IV.   LEGAL STANDARD

"Summary judgment should be granted only 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Bender v. Twp. of Monroe*, 289 Fed. Appx. 526-526-27 (3d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). On a summary judgment motion, the moving party must first show that there is no genuine issue of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assertions, bare allegations, or speculation. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). The Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### V.   DISCUSSION

The Court will now proceed to address the propriety of granting summary judgment as to each of Plaintiff's claims.

A.   Propriety of Granting Summary Judgment as to Plaintiff's Retaliation Claim under the NJLAD

Discrimination claims under the NJLAD generally follow the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Victor v. State*, 203 N.J. 383, 408 (2010). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. *Id.* If the employer meets this burden, the plaintiff must then show that the employer's articulated reason is a mere pretext for discrimination. *Id.* at 804.

a.   Plaintiff's *Prima Facie* Case

"[T]he prima facie elements of a retaliation claim under the [NJ]LAD requires [sic] [a] plaintiff to demonstrate that: (1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." *Victor*, 203 N.J. at 409. Here, there is no dispute either that Plaintiff was in a protected class on account of a disability or that he was subject to an adverse employment action when he was terminated. Only the second and fourth elements are in dispute. Therefore, the Court will proceed to consider the extent to which Plaintiff has satisfied these elements of his *prima facie* retaliation claim.

1.   Protected Conduct

In relevant part, the NJLAD prohibits discrimination because of a disability. N.J.S.A.

10:5-3.  The anti-retaliation provision of the NJLAD forbids:

> any person to take reprisals against any person because that person
> has opposed any practices or acts forbidden under this act or
> because that person has filed a complaint, testified or assisted in
> any proceeding under this act or to coerce, intimidate, threaten or
> interfere with any person in the exercise or enjoyment of, any right
> granted or protected by this act.

N.J.S.A. 10:5-12(d).

Here, Plaintiff's NJLAD retaliation claim is premised entirely on his allegation that Defendant retaliated against him for "requesting accommodation [in the form of extended medical leave] and taking advantage of Defendant's accommodation of his handicap by terminating him for taking extended medical leave." (*See* Am. Compl. at ¶¶ 23, 27.)  Defendant argues that it is entitled to summary judgment as to Plaintiff's retaliation claim because, among other reasons, Plaintiff cannot satisfy the first element of his *prima facie* case, that is, that he engaged in protected activity.  Specifically, Defendant argues that "taking medical leave does not constitute protected activity that would support a retaliation claim under the NJLAD." (Def. Br. at 6.)  In so doing, Defendant largely relies on this Court's holding in *Wagoner v. Medco Health Solutions, Inc.*, No. 06-5167, 2009 U.S. Dist. LEXIS 21773 (D.N.J. Mar. 18, 2009) (Linares, J.).

In that case, this Court held that the "taking of medical leave . . . is not a protected activity under the NJLAD" because "[t]he language of the statute does not embrace" the taking of medical leave.  *Wagoner*, 2009 U.S. Dist. LEXIS 21773, at *17.  In that same case, however, the Court suggested that courts had not clearly resolved whether the taking or requesting of medical leave is protected activity under the NJLAD.  *See id.* at *16; *compare DiMare v. Metlife Ins. Co.*, No. 07-4268, 2008 U.S. Dist. LEXIS 43093, at *7 (Brown, J.) ("Plaintiff fails to provide any persuasive authority to persuade the Court that a medical leave of absence is protected activity under the NJLAD") (cited in *Wagoner*, 2009 U.S. Dist. LEXIS 21773, at *16),

with *Nusbaum v. CB Richard Ellis, Inc.*, 171 F. Supp. 2d 377, 388 (D.N.J. 2001) (Greenaway, J.) ("[Plaintiff's] complaint clearly alleges that she engaged in protected activity [under the NJLAD] when she sought a leave of absence . . . for medical reasons.") (cited in *Wagoner*, 2009 U.S. Dist. LEXIS 21773, at *16.).

A further review of both the case law and the language of the NJLAD's anti-retaliation provision now compels this Court to conclude that the requesting and taking of medical leave are protected activities under the NJLAD.  The anti-retaliation provision of the NJLAD specifically prohibits employers from interfering with "any right granted or protected by [the NJLAD]." N.J.S.A. 10:5-12(d).  A disabled employee's right to a reasonable accommodation is one such right.  *See, e.g.*, *Victor*, 203 N.J. at 412 ("Affording persons with disabilities reasonable accommodation rights is consistent with the [NJ]LAD's broad remedial purposes.").  Moreover, a reasonable accommodation can take the form of a temporary leave of absence.  *See* N.J. Admin. Code 13:13-2.5(b)(1)(ii); *see also Santiago v. Cnty. of Passaic*, No. A-3599-06T1, 2009 N.J. Super. Unpub. LEXIS 441, at *13 (App. Div. 2009) (observing that New Jersey courts "have indicated that a leave of absence may constitute a reasonable accommodation under the [NJ]LAD.") (citing cases).  Accordingly, it necessarily follows that when a disabled employee requests and then takes a temporary medical leave of absence, said employee avails himself of a right that is "granted or protected by [the NJLAD]," and thus engages in protected conduct.  *See* N.J.S.A. 10:5-12(d)

Interpreting the NJLAD's anti-retaliation provision as embracing the requesting and taking of medical leave is consistent with the weight of authority interpreting the anti-retaliation provision of the Americans with Disabilities Act ("ADA"), which is nearly identical to that of

the NJLAD.[9]   Indeed, most courts that have considered the issue have held that the ADA's anti-retaliation provision embraces requests for leave as protected conduct.   *See, e.g., Brown v. Lassiter-Ware, Inc.*, No. 11-1074, 2013 U.S. Dist. LEXIS 116375, at * (M.D. Fla. Aug. 16, 2013) (observing that the plaintiff "engaged in protected activity under the ADA by requesting a one-month leave of absence as a reasonable accommodation."); *Guinup v. Petr-All Petroleum Corp.*, 786 F. Supp. 2d 501, 514 (N.D.N.Y. 2011) ("[T]aking medical leave is a protected activity within the meaning of the ADA."); *Jordan v. Sch. Dist. of Phila.*, No. 11-2712, 2012 U.S. Dist. LEXIS 74034, at *22 (E.D. Pa. May 29, 2012) ("Even if [the plaintiff's] requests for leave exceeded the scope of what is required under the ADA, she nonetheless engaged in protected activity if she had a reasonable, good faith belief that she was entitled to request this accommodation.") (citations omitted); *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 703 (E.D. Pa. 2010) ("[Plaintiff's] request for additional leave is protected activity under the ADA."); *Dove v. Cmty. Educ. Ctrs., Inc.*, No. 12-4384, 2013 U.S. Dist. LEXIS 170081, at *63 (E.D. Pa. Dec. 2, 2013) ("[N]umerous courts have recognized that a request for a leave of absence for medical treatment may constitute a request for a reasonable accommodation under the ADA" and thus constitutes a protected activity).

Because the NJLAD entitles a disabled plaintiff to a reasonable accommodation which may take the form of a temporary leave of absence, this Court holds that Plaintiff engaged in protected conduct when he requested and took medical leave.

### 2.   Causal Link

---

[9] The anti-retaliation provision of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA] . . . [and that] [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted by [the ADA]." 42 U.S.C. § 12203.

In arguing that there is no causal link between Plaintiff's protected conduct and his termination, Defendant argues that "the record evidence is conclusive that Plaintiff's employment was terminated as a consequence of his refusal to come to work for a month after his promised return to work date without any justifiable or sustainable basis." (Def. Br. at 7-8.) This argument misses the mark because it does not go to Plaintiff's *prima facie* claim, but to Defendant's burden of articulating a legitimate nondiscriminatory reason for terminating Plaintiff under the *McDonnell Douglas* framework.

More importantly, it is apparent to the Court that there are genuine issues of material fact as to whether there is a causal link between Plaintiff's having requested and taken medical leave, and his termination. Two examples suffice to illustrate this point.

First, Ciechalski—Plaintiff's direct supervisor—sent an email to McDonald on July 18, 2011, while Plaintiff was on leave, inquiring about the possibility of terminating Plaintiff. (*See* McDonald Depo. Ex. P.) There is no dispute that as of the date of Ciechalski's email, Defendant was aware of Plaintiff's need for FMLA leave, as Defendant generated a Notice of Eligibility informing Plaintiff of his eligibility for FMLA leave only three days prior, on July 15, 2011. Based on these facts, a reasonable jury could find that Defendant's motivation for terminating Plaintiff was his need for medical leave.

Second, based on the totality of the evidence in the record, a reasonable jury could find that the timing of Plaintiff's termination—only three days after he attempted to return to work— is suggestive of retaliation. The Court is mindful that "the close temporal proximity between a protected act and an adverse employment action, *alone*, is insufficient to raise an inference of retaliation." *See, e.g., Carvalho v. Aircraft Serv. Int'l, Inc.*, No. 12-2430, 2013 U.S. Dist. LEXIS 145279, at *29-*30 (D.N.J. Oct. 8, 2013) (citations omitted) (emphasis added); *see also Young v.*

*Hobart West Group*, 385 N.J. Super. 448, 467 (App. Div. 2005) ("[T]he mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two.") (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)). However, when other facts in the record could lead a reasonable jury to find a causal connection between protected activity and an adverse employment decision, as is the case here, it is appropriate to consider the extent to which the temporal proximity between the protected activity and the adverse employment action is suggestive of discriminatory animus on the part of the employer.   *See, e.g., Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (holding that based on "[a]n objective review of the record," plaintiff set forth sufficient evidence of a causal connection between protected act of filing claim with the Equal Employment Opportunity Commission and termination of employment "by the circumstance that the discharge followed rapidly, only two days later, upon [the employer's] receipt of notice of" the plaintiff's claim.); *see also Rosenfeld v. Canon Bus. Solutions, Inc.*, No. 09-4127, 2011 U.S. Dist. LEXIS 115415, at *51 (D.N.J. Sept. 26, 2011) (holding that plaintiff offered "plausible evidence of causation [in connection with NJLAD retaliation claim] on two grounds: temporal proximity *and* ongoing antagonism due to his handicap.") (emphasis added).

    For the reasons set forth above, the Court holds that Plaintiff has come forward with sufficient evidence to establish the elements of his *prima facie* claim of retaliation under the NJLAD.   Accordingly, the Court must proceed to consider whether Defendant has articulated a legitimate nondiscriminatory reason for terminating Plaintiff, and whether there is any evidence in the record to suggest that any such reason is a pretext for discrimination.

    b.    <u>Defendant's Legitimate, Nondiscriminatory Reason for Terminating Plaintiff and Evidence of Pretext</u>

    Defendant claims that it terminated Plaintiff for job abandonment. (*See, e.g., Def.* Br. at

9.) For purposes of deciding this summary judgment motion, the Court will assume that Defendant has met its burden under the *McDonnell Douglas* framework of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Therefore, the Court must consider whether there is any evidence in the record to suggest that Defendant's proffered reason for terminating Plaintiff is pretextual. *See id.*

Construing the facts in the record in the light most favorable to Plaintiff compels this Court to conclude that a reasonable jury could find that Defendant's articulated reason for terminating Plaintiff is a pretext for discrimination. The Court will provide two illustrative examples of disputed issues of material fact that preclude this Court from holding, as a matter of law, that Plaintiff has failed to set forth any evidence of pretext.

First, there is a genuine issue of material fact as to whether Plaintiff was aware that his leave expired on September 29, 2011. Plaintiff denies having ever received the Notice of Designation from Defendant stating the date of expiration of his leave, and Defendant does not dispute this fact with a proper citation to the record. (*Id.* at ¶ 60; Def. Resp. to Pl. Supp. SUMF at ¶ 60.) Additionally, it is undisputed that Defendant continued to pay Plaintiff his salary even after his leave expired. (Pl. Supp. SUMF at ¶ 85.) Based on these facts, a reasonable jury could believe that Defendant purposely kept Plaintiff in the dark as to when he was expected to return to work to later justify his termination.

Second, there is a dispute as to whether at some point in September 2011, Plaintiff sent McDonald a text message suggesting that Dr. Mautner might clear him to return to work after his visit of October 12, 2011. (*Compare* Pl. Supp. SUMF at ¶ 75, *with* Def. Resp. to Pl. Supp. SUMF at ¶ 75.) Should a jury believe that Plaintiff did, in fact, send McDonald this text message, it could also reasonably believe that Defendant had notice that Plaintiff intended to

18

return to work, and thus had no basis to terminate him for job abandonment.

Because there are sufficient facts in the record that could lead a reasonable jury to find both that Plaintiff has established a *prima facie* case of retaliation under the NJLAD, and that Defendant's articulated reason for terminating him is pretextual, it would be inappropriate for the Court to grant summary judgment as to Plaintiff's retaliation claim in favor of Defendant. Accordingly, insofar as Defendant moves for summary judgment as to Plaintiff's retaliation claim under the NJLAD, the motion is denied.

  B. <u>Propriety of Granting Summary Judgment as to Plaintiff's Disability Discrimination Claim under the NJLAD</u>

Defendant argues that Plaintiff cannot establish a *prima facie* case of disability discrimination because he cannot satisfy the second element of a disability discrimination claim, namely, that he was performing at a level that met Defendant's expectations. The Court agrees.

There is no dispute that two weeks before Plaintiff discovered the blister on his leg, he was reprimanded for his unsatisfactory job performance. The Coaching Report Plaintiff received on April 25, 2011 describes various examples of Plaintiff's deficient job performance, including a failure to complete assigned tasks on April 4 and 22, 2011, and an inability "to provide the necessary leadership to teach, coach, and train his associates." (Weisbrot Cert., Ex. G.) The Coaching Report also advised Plaintiff to "take the necessary steps to improve on his job performance" and warned that "[t]he next level of action if [his] behavior continues" could include termination. (*Id.*) Four days after Plaintiff received the Coaching Report, Plaintiff's supervisor informed the Market Human Resources Manager that Plaintiff had left work without either notifying any of the shift managers, or completing his overnight responsibilities. (Def. SUMF. at ¶ 20.)

It is clear that <u>*before*</u> Plaintiff ever discovered his blister and requested and took medical

19

leave, Defendant did not consider his job performance satisfactory. Thus, any dispute as to whether Plaintiff was actually performing satisfactorily is not relevant to whether any performance deficiencies served as a pretext to discriminate against Plaintiff on account of any disability.

The Court notes that Plaintiff denies that his job performance was ever deficient. Plaintiff's bare conclusory denial, however, is insufficient to create a genuine issue of material fact as to whether he was meeting Defendant's legitimate performance expectations. *See Betts*, 621 F.3d at 252. In his opposition brief, Plaintiff fails to point to any evidence suggesting that he had been performing his job at a level meeting Defendant's legitimate expectations prior to taking leave. In fact, Plaintiff merely glosses over his *prima facie* burden in a single paragraph, (*see* Pl. Oppn. Br. at 18), and devotes extensive space in his brief to argue that Defendant's justification for terminating his employment (i.e., that he abandoned his job) is pretextual, (*id.* at 16-21).

This argument misses the mark. Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of setting forth sufficient facts to support a reasonable finding that he has established all the elements of a *prima facie* case of disability discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Plaintiff's conclusory assertion that "[h]e was qualified to perform the job as there is no allegation that he was terminated for poor performance," (*see* Pl. Oppn. Br. at 18), is insufficient to create a genuine issue of material fact as to whether his performance met Defendant's legitimate expectation. *See Betts*, 621 F.3d at 252. Accordingly, insofar as Defendant moves for summary judgment as to Plaintiff's disability discrimination claim, the motion is granted.

C.  <u>Propriety of Granting Summary Judgment as to Plaintiff's Claim for Failure to Provide a Reasonable Accommodation and Failure to Engage in the Interactive</u>

Process in Violation of the NJLAD

In a "failure to accommodate case of disability discrimination, a plaintiff must first present the prima facie elements required in any [NJ]LAD disability discrimination claim, that is: (1) plaintiff was disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment; and (3) plaintiff suffered an adverse employment action because of the disability." *Victor v. State*, 401 N.J. Super. 596, 614 (2008). If "there is a claim that the employer failed to engage in an interactive process concerning accommodation, that argument goes to the second factor of the *prima facie* case." *Linton v. L'Oreal USA*, No. 06-5080, 2009 U.S. Dist. LEXIS 25357, at *7 (D.N.J. Mar. 27, 2009) (Linares, J.) (citing *Victor*, 401 N.J. Super. at 614).

"To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 400-01 (App. Div. 2002). "The burden is first upon the employee to request assistance, and then upon the employer to come up with potential accommodations." *Linton*, 2009 U.S. Dist. LEXIS 25357, at *8 (citing *Tynan*, 351 N.J. at 400). "While there are no magic words to seek an accommodation, the employee, however, must make clear that . . . assistance [is desired] for his or her disability." *Tynan*, 351 N.J. Super. at 400 (alteration in original) (citation and internal quotation marks omitted).

Here, Plaintiff's failure to accommodate claim is largely premised on his allegations that: (1) "Defendant failed to engage in the 'interactive process' and unilaterally imposed a return date

that was not consistent with Plaintiff's doctor's recommendations in violation of the NJLAD;" and (2) "Defendant unreasonably failed to accommodate Plaintiff by authorizing a reasonable extension of Plaintiff's leave," and failing to "return[] him to his open position." (*See* Am. Compl. at ¶¶ 33-34, 37.)   The Court construes Plaintiff's failure to accommodate claim as asserting two alternative theories as to the second element of his *prima facie* case—(a) that Defendant failed to provide a reasonable accommodation in connection with Plaintiff's request for leave until September 10, 2011, and (b) that Plaintiff failed to engage in the interactive process in connection with Plaintiff's purported request for leave until October/November 2011. *See, e.g., Linton*, 2009 U.S. Dist. LEXIS 25357, at *8; *see also Mickens v. Lowe's Cos.*, No. 07-6148, 2010 U.S. Dist. LEXIS 66071, at *6 (D.N.J. July 2, 2010).

    a.    <u>Plaintiff's Claim that Defendant Failed to Provide a Reasonable Accommodation in Connection with his Request for Leave through September 10, 2011</u>

Although the parties dispute when, exactly, Plaintiff requested leave, there is no dispute that on July 27, 2011, Plaintiff filed a proper request for FMLA leave from June 22 to September 10, 2011.  (Def. SUMF at ¶ 40; Pl. Resp. SUMF at ¶ 42.)  Approximately one day prior to Plaintiff's request of July 27, 2011, Defendant received a certification from Dr. Mautner stating that Plaintiff suffered from leg ulcers and could return to work in October / November 2011. (*See* McDonald Dep. Ex. K.)

Defendant appears to argue that it is entitled to summary judgment as to Plaintiff's failure to accommodate claim because: (1) Plaintiff never requested leave beyond twelve weeks of FMLA leave and (2) New Jersey law does not require an employer to grant a leave of absence as a reasonable accommodation.  Plaintiff, on the other hand, largely argues that he is entitled to summary judgment as to his failure to accommodate claim because Defendant failed to return him to his open position when he was medically cleared to return to work.

Defendant's arguments in support of its motion are unpersuasive for two reasons. First, while the argument that Plaintiff did not request leave beyond twelve weeks of FMLA leave is relevant to Plaintiff's theory that Defendant failed to engage in the interactive process—a theory that is discussed *infra*—it does not otherwise address the essential elements of a failure to accommodate claim. Second, Defendant's assertion that New Jersey law does not require it to provide a leave of absence as a reasonable accommodation is wrong as a matter of law. As discussed in Section V.A.a.1, *supra*, New Jersey law recognizes that a reasonable accommodation may take the form of a temporary leave of absence. *See, e.g.*, N.J. Admin. Code 13:13-2.5(b)(1)(ii); *see also Santiago*, 2009 N.J. Super. Unpub. LEXIS 441, at *15 (observing that "whether or not a leave of absence was a *reasonable* accommodation . . . is a jury question) (emphasis in original). Thus, it follows that a failure to extend a disabled employee's leave of absence for a finite period of time can, indeed, subject an employer to liability for failure to provide a reasonable accommodation. *See* N.J. Admin. Code 13:13-2.5(b)(1)(ii); *Santiago*, 2009 N.J. Super. Unpub. LEXIS 441.[10]

Plaintiff's argument that he is entitled to summary judgment because Defendant failed to restore him to his open position once he was medically cleared to work is also unpersuasive. Even if the Court were to agree that Defendant's failure to restore Plaintiff to his open position weighs in favor of a finding that Defendant failed to reasonably accommodate him, Plaintiff has

---

[10] It bears mentioning that Defendant's reliance on *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004) for the proposition that an employer is categorically not required to extend an employee's leave of absence to provide a reasonable accommodation is misplaced. In *Conoshenti*, the Third Circuit "decline[d] to hold that a temporary leave of absence must be granted under the NJLAD" because "requiring [the plaintiff's employer] to grant [the plaintiff] a leave of absence as an accommodation following his FMLA leave would not have enabled him to presently perform his job," as required by the New Jersey Administrative Code. 364 F.3d at 150. At the time that *Conoshenti* was decided, "the New Jersey Administrative Code provide[ed] an exception to an employer's obligation to provide a reasonable accommodation" when the employee could not "'presently perform the job even with reasonable accommodation.'" *Id.* (quoting N.J. Admin. Code 13:2.8(a)). As the Appellate Division noted in *Santiago*, however, "the precedential weight of *Conoshenti* was dissolved by amendment of [the New Jersey Administrative Code] to remove the word 'presently' in connection with a disabled individual's ability to perform his or her job in order to clarify that a leave of absence was a form of reasonable accommodation in employment under the [NJ]LAD." 2009 N.J. Super. Unpub. LEXIS 441, at *14.

not explained how a consideration of the third essential element of his failure to accommodate claim entitles him to summary judgment as to this claim. That is, Plaintiff has failed to set forth any reason that should compel the conclusion that he "suffered an adverse employment action *because* of his disability." *See, e.g., Victor*, 401 N.J. Super. at 614 (emphasis added). In any event, as discussed in Section V.A.a.2, *supra*, there are genuine issues of material fact as to whether Plaintiff was terminated because of his disability. Thus, it would be inappropriate for this Court to hold—as a matter of law—that Defendant failed to reasonably accommodate Plaintiff in connection with his request for leave until September 10, 2011 by refusing to reasonably extend Plaintiff's leave.

For the foregoing reasons, Defendant's motion and Plaintiff's cross-motion are denied insofar as each motion seeks summary judgment as to Plaintiff's failure to accommodate claim to the extent that this claim is premised on Defendant's purported  failure to reasonably accommodate Plaintiff in connection with his request for leave until September 10, 2011.

     b.    <u>Plaintiff's Claim that Defendant Failed to Engage in the Interactive Process</u>

Defendant argues that it is entitled to summary judgment as to Plaintiff's failure to accommodate claim insofar as this claim is premised on its purported failure to engage in the interactive process because, among other reasons, Plaintiff never requested any accommodation. (*See* Def. Br. at 16-17.) Plaintiff, on the other hand, suggests that Dr. Mautner's July 2011 certification of Plaintiff's need for leave through October /November 2011 amounted to a request for leave through that date, which triggered Defendant's obligation to engage in the interactive process. (Pl. Br. at 11-16.)

Here, there is no legitimate dispute that Plaintiff, himself, never requested any accommodation beyond medical leave through September 10, 2011. The record demonstrates

that in the request for leave that Plaintiff submitted to Defendant on July 27, 2011, he agreed "to return to work on September 10, 2011." (*See* Weisbrot Cert. Ex. Q.) Defendant approved this request for leave. (Def. SUMF at ¶ 44; Pl. Resp. SUMF at ¶ 44.)

During his deposition, Plaintiff acknowledged that while he was on leave, he neither asked Defendant to accommodate his injury in any way, nor informed Defendant that he could work with a reasonable accommodation. (*See* Weisbrot Cert., Ex. F, Boles Depo. Tr. at 195:1-3; 196-97.) Therefore, the question this Court must address is whether a physician's certification suggesting that an employee requires leave beyond the date the employee requested amounts to a request for leave through that time. This Court previously addressed this very question in *Linton.*

In that case, an employee brought an NJLAD failure to accommodate claim against his employer for terminating him after he attempted to return to work following medical leave. *Linton*, 2009 U.S. Dist. LEXIS 25357, at *2-*5. After the employer granted the employee's initial request for leave, the employee submitted a series of notes from his physician to his employer indicating that the employee would remain on leave beyond the expiration of his approved leave. *Id.* at *3, *10-*11. The notes, however, did not contain any specific requests for an extension of leave. *Id.* at *3, *10-*11. In opposing summary judgment, the employee argued that "the series of notes from [his physician] provided sufficient notice that he required some additional accommodation due to his continued inability to return to work." *Id* at *11. This Court rejected the employee's argument, reasoning that "to interpret the type of form supplied by the physician . . . as a request for accommodation on behalf of an employee would have the result of shifting the burden to begin the interactive accommodation process to the employer." *Id.* at *11-*12. Specifically, this Court held that "[s]omething more is required of an

employee under the NJLAD than merely apprising her employer that she is still injured to start the interactive process; the employee must at least arguably seek assistance to survive summary judgment." *Id.* at *16.

Here, Dr. Mautner's certification does not make any explicit or implicit request for an accommodation. Like the notes of the physician in *Linton*, Dr. Mautner's certification states that Plaintiff could return to work at a date subsequent to the expiration of his approved leave, but does not request that Plaintiff's leave be extended beyond the time he, himself, requested. As neither Plaintiff nor Plaintiff's physician made so much as an arguable request for leave to be extended until October 2011, Defendant's obligation to engage in the interactive process was never triggered. *See Linton*, 2009 U.S. Dist. LEXIS 25357, at *16-*17.

Because the record is devoid of any evidence suggesting that Plaintiff made any clear request for leave through October/November 2011, the Court will grant summary judgment in Defendant's favor as to Plaintiff's failure to accommodate claim insofar as this claim is premised on Defendant's purported failure to engage in the interactive process. To the extent Plaintiff's cross-motion for summary judgment as to his failure to accommodate claim is premised on Defendant's failure to engage in the interactive process, Plaintiff's cross-motion is denied.

D.    Propriety of Granting Summary Judgment as to Plaintiff's FMLA Interference
      Claim

The FMLA entitles employees to a maximum of twelve weeks of leave per year to address "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(D). "After an eligible employee[11] returns from FMLA leave, the employee is entitled to be reinstated to his or her former position or an equivalent one." *Conoshenti*, 364 F.3d 135 (3d Cir. 2004). To protect these substantive rights,

---

[11] Defendant does not dispute that Plaintiff was an eligible employee within the meaning of the FMLA.

the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).

Department of Labor ("DOL") "regulations impose upon the employer obligations to communicate with employees regarding their rights under the FMLA." *Conoshenti*, 364 F.3d at 142. Under these regulations, "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). The DOL regulations also require employers to "provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.300(c)(1). Finally, DOL regulations make "[t]he employer . . . responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee" within five business days of having "sufficient information to determine whether the leave is being taken for an FMLA-qualifying reason" unless there are extenuating circumstances. 29 C.F.R. § 825.300(d)(1).

An employer's failure to comply with the notice requirements set forth in the DOL regulations "may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights," subjecting the employer to liability. 29 C.F.R. § 825.300(e). When, as in this case, an FMLA interference claim is premised on an employer's failure to provide timely notice, the plaintiff must show that the employer's failure to provide notice resulted in an "impairment of [his] rights and resulting prejudice." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002); *see also Conoshenti*, 364 F.3d at 143 (observing that a plaintiff may "show an interference with his right to leave under the FMLA, within the meaning of 29 U.S.C.

27

§ 2615(a)(1), if he is able to establish that his failure to advise rendered him unable to exercise that right in a meaningful way, thereby *causing injury*.") (emphasis added).

Here, Plaintiff's FMLA interference claim is largely premised on his contentions that: (a) Defendant failed to send him either the Notice of Eligibility and Notice of Designation following his request for leave, and (b) even if Defendant had, in fact, sent him a Notice of Designation, that notice did not clearly inform him when his FMLA leave expired. (*See* Def. Oppn. Br. at 23-24.)

A thorough review of the record compels this Court to conclude that there is a genuine issue of material fact as to whether Plaintiff received the Notice of Eligibility and Notice of Designation, as was his right under the FMLA. Whereas Plaintiff claims that he did not receive these notices, Defendant claims that he did. (*See* Pl. Supp. SUMF at ¶ 60; Def. Resp. to Pl. Supp. SUMF at ¶ 60.) At the summary judgment stage, the Court's task is not to determine which version of the facts is accurate, but whether there is a genuine factual dispute for a jury to resolve. With respect to whether Plaintiff received the notices to which he was entitled, such a dispute exists.

Additionally, even if Defendant had, in fact, sent Plaintiff the Notice of Designation, there is a question of fact as to whether that document gave proper notice of FMLA-designated leave, as required under 29 C.F.R. § 825.300(d)(1). The Notice of Designation states that Plaintiff's leave was approved from May 9, 2011 through September 29, 2011, and that "[a]ll leave taken for this reason will be designated FMLA leave." (McDonald Depo. Ex. O.) That same document, however, contains small text within a box entitled "Type of Leave Approved" stating the following:

> 05/09/2011—7/31/2011 – FMLA-SHC-Paid
> 08/01/2011—08/06/2011 – Personal-SHC-Paid

28

08/07/2011—09/29/2011 – Personal-SHC-Unpaid (MHRM's
approval needed)
Expected return to work date: 9/30/2011

(McDonald Depo., Ex. O.)

Based on the contents of the Notice of Designation, it would be inappropriate for this Court to conclude that the Notice of Designation gave adequate notice of FMLA-designated leave. The extent to which the Notice of Designation properly designated FMLA-leave raises a factual issue for a jury to resolve.

Having determined that there are genuine issues of material fact both as to whether Plaintiff received the notices to which he was entitled and the adequacy of such notices, the Court must now consider the prejudice element of Plaintiff's FMLA interference claim. Defendant argues that even if it failed to properly notify Plaintiff of his FMLA-designated leave, Plaintiff suffered no resulting prejudice as he took his full twelve weeks of FMLA leave and was paid. (*See* Def. Reply Br. at 12.) This argument is unpersuasive.

In *Conoshenti*, the Third Circuit held that a reasonable jury could find that an employer's failure to properly notify the plaintiff of the expiration date of his FMLA-leave prejudiced him insofar as it precluded him from making an "informed decision about structuring his leave and… his plan of recovery, in such a way as to preserve the job protection afforded by the [FMLA]." *See* 364 F.3d at 143. Like the plaintiff in *Conoshenti*, Plaintiff claims that had he known that his job was not protected after July 31, 2011—the date his FMLA leave expired—he would have explored alternative arrangements to retain his job. If a jury were to find that Defendant failed to give Plaintiff proper notice, it could also reasonably find that Plaintiff's consequent inability to make an informed decision as to how to structure his leave amounted to prejudice.

29

Because there are genuine issues of material fact as to: (a) whether Plaintiff received the notices to which he was entitled, (b) the adequacy of these notices, and (c) the extent to which Defendant's purported failure to provide Plaintiff proper notice caused prejudice, it would be inappropriate for this Court to grant summary judgment as to Plaintiff's FMLA interference claim in Defendant's favor.  Accordingly, insofar as Defendant has moved for summary judgment as to Plaintiff's FMLA interference claim, the motion is denied.

## VI.   CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted in part and denied in part.  Specifically, Defendant's motion is granted as to Plaintiff's: (a) disability discrimination claim, and (b) failure to accommodate claim to the extent that this claim is premised on Defendant's purported failure to engage in the interactive process.  Defendant's motion is denied as to Plaintiff's: (a) retaliation claim; (b) failure to accommodate claim to the extent that this claim is premised on Defendant's purported failure to provide a reasonable accommodation in connection with Plaintiff's request for leave until September 10, 2011; and (c) FMLA interference claim.  Plaintiff's cross-motion for summary judgment is denied.  An appropriate Order follows.

Dated: 26 of March, 2014.

_____
JOSE L. LINARES
U.S. DISTRICT JUDGE