UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BARRY BOLES, | : | |
| *Plaintiff*, | : | Civ. Action No. 12-1762 |
| v. | : | OPINION |
| WAL-MART STORES, INC., | : | August 6, 2015 |
| *Defendant*. | : | |

**ARLEO, UNITED STATES DISTRICT JUDGE.**

## I. INTRODUCTION

This matter is before the Court on Plaintiff Barry Boles' ("Plaintiff") motion for attorneys' fees and costs [Dkt. No. 87] and Defendant Wal-Mart Stores, Inc.'s ("Defendant") motion for a judgment notwithstanding the verdict pursuant to Rule 50(b) [Dkt. No. 97]. Pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1, the Court did not hear oral argument. For the reasons set forth below, Plaintiff's motion is **GRANTED-IN-PART** and Defendant's motion is **DENIED.**

## II. HISTORY

Plaintiff worked for Defendant Wal-Mart and his employment was terminated after taking medical leave. At trial, Plaintiff claimed that Defendant violated the New Jersey Law Against Discrimination ("NJLAD") by retaliating against him for requesting and taking leave and/or by refusing to grant a reasonable extension of his leave. In addition, Plaintiff claimed that Defendant failed to give him adequate notice of his leave rights and obligations under the Family and Medical Leave Act ("FMLA"), which interfered with his ability to exercise his rights under the Act.

Plaintiff sought to recover compensatory damages for past and future economic losses and emotional distress, as well as punitive damages.[1]

Between March 24, 2015, and March 31, 2015, this Court presided over a jury trial. Prior to the close of Plaintiff's case, Plaintiff withdrew his interference with FMLA rights claim. Thus, the only two claims presented to the jury for a verdict were Plaintiff's NJLAD retaliation and failure to accommodate claims. The jury found in favor of the Defendant on Plaintiff's failure to accommodate claim and in Plaintiff's favor on his retaliation claim. The jury awarded Plaintiff $130,000 in back pay and $10,000 in past emotional distress damages. No front pay was awarded. The matter then proceeded to the punitive damages stage and the jury awarded Plaintiff $60,000.

### III.  DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Judgment as a matter of law is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury" to find in favor of the non-moving party. Fed. R. Civ. P. 50(a). Thus, the district court must determine "whether, viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found for the prevailing party." Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003). Rule 50 motions should be granted "sparingly," id., and only where "the record is critically deficient of the minimum quantum of evidence" in support of the verdict. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995).

#### a. Liability

Here, the jury returned a verdict in Plaintiff's favor on his NJLAD retaliation claim. The prima facie elements of a retaliation claim under the LAD are: (1) plaintiff was in a protected class;

---

[1] In his Amended Complaint, Plaintiff also alleged that Defendant discriminated against him in violation of the NJLAD and failed to engage in the interactive process. Summary judgment was granted for Defendant on these claims.

(2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) there is a causal link between the protected activity and the adverse employment consequence. Victor v. State, 203 N.J. 383, 409 (2010).

Defendant argues that Plaintiff did not establish that he was in a protected class, i.e., disabled. The Court, however, is satisfied that there was sufficient evidence to support a finding that Plaintiff was disabled under the NJLAD. Plaintiff presented credible evidence through his own testimony, his medical records, and the testimony of his treating physician on this issue. Defendant's reliance on cases addressing "disability" under other frameworks, such as the Americans with Disabilities Act, is misplaced as the standard for disability under the NJLAD is broader. Moreover, expert testimony on this issue is not required. See DiPasquale v. Hackensack Univ. Med. Ctr., No. L-7905-10, 2014 WL 7511626, at *7-8 (N.J. App. Div. Jan. 15, 2015).[2]

Defendant also challenges that Plaintiff engaged in a "protected activity," arguing that the only "protected activity" at issue was Plaintiff's request for an extension of medical leave. Plaintiff's theory, supported by ample evidence at trial, was that the protected activity was taking leave. In the Final Pretrial Order, plaintiff made clear that his claim was that Wal-Mart retaliated against him for "taking leave in violation of the NJLAD." FPO ¶ 15. That is consistent with the Amended Complaint, all other pretrial submissions, and Judge Linares's opinion denying summary judgment. See Am. Compl. ¶ 27 ("Defendant retaliated against Plaintiff for requesting accommodation and taking advantage of Defendant's accommodation of his handicap by terminating him for taking extended medical leave in violation of the NJLAD."). The evidence

---

[2] Defendant's reliance on Plaintiff's statement at his deposition that he was unsure whether his blister constituted a handicap under the NJLAD is specious. See Pl. Br. at 13. Here, after hearing all the evidence, the jury concluded that Plaintiff was disabled.

3

at trial supported a finding that Plaintiff engaged in a protected activity, i.e., taking leave, and was retaliated against, i.e., terminated, for engaging in that activity.

Defendant also argues that because Plaintiff "abused" Defendant's leave policies and because Plaintiff's leave was "unreasonable" because it was "indefinite," Plaintiff's request was not protected as a matter of law. These, too, were rejected by the jury. Based upon the evidence presented at trial, a reasonable jury could have found that Plaintiff did not abuse Defendant's policies and that his request was reasonable.

Defendant further argues that Plaintiff was unable to demonstrate a causal link between his taking medical leave and his termination. Here, however, there was sufficient "other evidence" to establish such link. See Anderson v. Thermo Fisher Scientific, No. 11-3394, 2013 WL 1222738, at *7 (D.N.J. Mar. 25, 2013) reconsideration denied, 2013 WL 3188916 (D.N.J. June 20, 2013). Such evidence included internal Wal-Mart emails in which employees discussed whether Plaintiff could be legally terminated for taking leave and that Plaintiff's termination letter was not sent until after Plaintiff had returned to work, even though the justification provided in that letter was job abandonment. This evidence, along with other circumstantial evidence adduced through testimony, constitutes sufficient "other evidence" of a causal link between Plaintiff taking leave and his termination.

Similarly, Defendant challenges whether Plaintiff has demonstrated that its justification for Plaintiff's termination, "job abandonment," was mere pretext. Again, Wal-Mart's internal emails and, perhaps most importantly, the termination letter support the jury's determination that Plaintiff met this burden. Evidence also demonstrated that, during this period, Plaintiff continued to communicate and attempted to communicate with his supervisors regarding his leave. Furthermore, Plaintiff continued to be paid during this period. Nonetheless, Plaintiff's termination

letter, which listed "job abandonment" as the reason for his termination, is dated after Plaintiff attempted to return to work. At trial, ample evidence was offered to demonstrate that Defendant's justification were mere pretext.

Finally, Defendant argues that Plaintiff should not be allowed to recover because he perjured himself. Defendant, however, fails to provide the Court with a single record citation to any specifically perjurious statements that would support overturning the jury's verdict. At trial, Defendant brought out inconsistences in Plaintiff's testimony, which the jury was able to consider when reaching its verdict.[3] These inconsistencies did not prevent Defendant from presenting its case and are insufficient to overturn the jury's verdict, which is supported by the evidence. See Radecki v. GlaxoSmithKline, 375 F. App'x 46, 47 (2d Cir. 2010); Turner v. Pleasant, 663 F.3d 770, 776 (5th Cir. 2011).

### b. Damages

Defendant argues the Plaintiff's back pay damages must be reduced based upon Plaintiff's failure to mitigate. At trial, however, Plaintiff offered evidence that he was unable to obtain comparable employment and then sought less-desirable employment. Plaintiff and his ex-wife testified to that effect. Further, the jury was properly instructed on Plaintiff's obligation to mitigate his damages, including Plaintiff's duty to "lower his sights" after a reasonable period of time. Put simply, there was sufficient evidence in the record to support the award of $130,000 in back pay.

Defendant also argues that Plaintiff failed to prove any emotional distress damages attributable to Defendant. The evidence revealed otherwise. The fact that Plaintiff was

---

[3] Additionally, while Defendant's motion is captioned as a motion for judgment as a matter of law pursuant to Rule 50, Defendant, in the context of this argument, appears to be relying upon the Court's "inherent authority." Under either standard, Defendant has failed to meet its burden. See Perna v. Elec. Data Sys., Corp., 916 F. Supp. 388, 397 (D.N.J. 1995); cf. Forrest v. Beloit Corp., No. 00-5032, 2005 WL 1869172, at *2 (E.D. Pa. Aug. 2, 2005).

experiencing additional emotional distress due to other stressors, including his father's death, does not preclude Plaintiff from recovering for the distress caused by Defendant's retaliation. Plaintiff presented ample evidence at trial to support his claim of emotional distress, including: (1) the testimony of Plaintiff and his ex-wife regarding Plaintiff's emotional state following his termination; (2) Plaintiff's many years of service as an employee of Defendant; (3) Plaintiff's two employee of the year awards; (4) Plaintiff's willingness to move to and from Florida to advance within the company; and (5) both Plaintiff's and his ex-wife's statements that "[Wal-Mart] was [Plaintiff's] life." Defendant introduced no affirmative evidence challenging Plaintiff's emotional distress. The Court is therefore satisfied that the jury properly weighed the evidence in finding that Plaintiff suffered emotional distress attributable to Defendant's conduct.

Finally, Defendant challenges the award of punitive damages. First, Defendant argues that the evidence does not support a finding that Mike Ciechalski or Quawad McDonald were upper management. The evidence adduced at trial, however, supports a finding that they met the definition of second-tier upper management because they were responsible for implementing Defendant's policies. See Cavouti v. N.J. Transit Corp., 161 N.J. 107, 127-28 (1999); see also Mar. 31, 2015, Tr. at 1296:24-1297:12.[4]

Defendant also argues Plaintiff failed to prove Defendant engaged in any egregious conduct. The evidence revealed otherwise. During both the initial trial and the punitive damages hearing, the jury heard evidence that Plaintiff attempt to contact his supervisors and others at Wal-Mart to no avail; that Wal-Mart never told Plaintiff that if he did not return by September 10, he would be fired; that Plaintiff continued to be paid and communicate with Defendant's employees

---

[4] As the Court noted during the March 31, 2015, charging conference, Defendant never amended its interrogatory as to who was involved in the decision to terminate Plaintiff. See Mar. 31, 2015, Tr. at 1253:20-23.

after September 10; that he actually returned to work but was sent home and fired the next day for "job abandonment"; and that the termination decision was made by a supervisor to whom Plaintiff had spoken just weeks earlier about his return. These facts all support the jury's finding of especially egregious conduct. See, e.g., Mar. 31, 2015, Tr. at 1297:11-1299:13.

### c. Conclusion

The Court is satisfied that there is ample evidence to support the jury's findings. While Defendant continues to challenge alleged "gaps" in Plaintiff's case, Defendant fails to recognize that the jury could have accepted Plaintiff's explanation as to the "gaps" and focused on the inconsistencies in Defendant's explanation for its treatment of Plaintiff, of which there are many. Why did Plaintiff's manager send an email, while Plaintiff was on leave, asking if he could be fired? If Plaintiff was fired in September, why did he continue to be paid? Why didn't his manager tell him he risked being fired when they spoke or texted? Why was Plaintiff's termination letter dated after Plaintiff attempted to return from work? Why was the effective date of termination also after Plaintiff tried to resume working? If Defendant questioned Plaintiff's proof of injury, why was his initial request granted and subsequently extended? While Defendant promised to offer evidence in its opening statement that Plaintiff was in Florida on vacation and then running a DJ business instead of being home with his leg elevated, why didn't Defendant offer any evidence of these facts? Here, the jury properly considered all the evidence, concluded that Defendant retaliated against Plaintiff, and determined that Defendant's conduct justified an award of punitive damages. It is not the Court's role to second-guess the jury's fact-finding and consideration of the evidence.

Defendant's motion for judgment as a matter of law is denied.

### IV. PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

In cases brought under the New Jersey Law Against Discrimination ("NJLAD"), "the prevailing party may be awarded a reasonable attorney's fee as part of the cost." N.J.S.A. § 10:5-27.1.

#### a. Plaintiff is a Prevailing Party Entitled To Attorney's Fees

A plaintiff is considered a prevailing party entitled to a fee award if they have succeeded on "any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit." Blakey v. Cont'l Airlines, Inc., 2 F. Supp. 2d 598, 602 (D.N.J. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Here, Plaintiff successfully litigated a retaliation claim under NJLAD and was awarded $200,000 ($130,000 for back pay, $10,000 for emotional distress and $60,000 in punitive damages), which claims were supported by ample evidence. Therefore, Plaintiff is entitled to a reasonable award of attorney's fees under NJLAD.

#### b. Reasonable Attorney's Fees and Costs

The first step in determining the attorney's fees and costs to be awarded is calculation of the "lodestar" amount. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. Id. The Court is thus required to engage in careful and critical evaluation of the hours and the hourly rates requested by counsel. Rendine v. Pantzer, 141 N.J. 292, 324 (1995). Additionally, for fee awards under NJLAD, New Jersey law requires trial courts to consider an enhancement of the lodestar fee to "reflect the risk of nonpayment" in cases in which the attorney's compensation is at least in part contingent on the success of the party at trial. Id. Plaintiff, as the party requesting fees, bears the initial burden of proving that his request is reasonable. Blakey, 2 F. Supp. 2d at 602. If this burden is met, Defendant may challenge the fee application through

specific objections to the requested fee award.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The Court may not decrease a fee award unless such specific objections are made.  Id.

### 1. Reasonable Hourly Rates

Plaintiff requests an award of fees for: (1) Colin M. Page, Esq., at the rate of $400/hour; (2) John P. Harrington, Esq., at the rate of $350/hour; and (3) Joshua Ben-Asher, Esq., at the rate of $250/hour.  Defendant challenges these proffered rates, arguing that Mr. Page's initial hourly rate was "between $250 and $350 per hour" as indicated in the retainer agreement and that there is no case law supporting a fee award in excess of $350/hour.[5]  Defendant also argues Mr. Harrington's and Mr. Ben-Asher's hourly rates should be $300/hour and $225/hour, respectively.  The Court disagrees.

To determine a reasonable hourly rate, the Court must "assess the skill and experience of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Rode, 892 F.2d at 1183; see also Rendine, 141 N.J. at 337.  Furthermore, the Court's determination should be based on current market rates instead of those rates in effect when legal services were rendered.  Rendine, 141 N.J. at 337.

Mr. Page currently charges $400/hour.  Mr. Page has over sixteen years' experience in the field of employment and labor law in New Jersey.  Additionally, Plaintiff has submitted certifications of Ty Hyderally, Esq., and Gregg Zeff, Esq., both experienced attorneys in the field of employment and labor law, in support of his request for fees at the hourly rate of $400 for Mr.

---

[5] The Retainer Agreement did provide that attorney rates were between $250 and $350 per hour.  See Ex. H, Dkt. No. 87-11.  Plaintiff retained his counsel, however, on a contingency fee basis.  Id.  Furthermore, the Court must consider current market rates when calculating fees, not those set forth in a 2011 Retainer Agreement.  Rendine, 141 N.J. at 337; Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001).

9

Page and $350 for Mr. Harrington.  Mr. Hyderally and Mr. Zeff bill at rates of $450/hour and $550/hour, respectively, and both stated that: (1) Mr. Page's and Mr. Harrington's requested rates were below the rates that similarly experienced practitioners charge; and (2) Mr. Hyderally and Mr. Zeff have been awarded their rates—which are higher than those sought here—in a number of cases in the New Jersey state courts.  See Cert. of Ty Hyderally, Dkt. No. 87, Ex. E; Cert. of Gregg Zeff, Dkt. No 87, Ex. F.  Moreover, Defendant has not produced any contradictory evidence in the form of attorney certifications or affidavits that suggest Plaintiff's requested rates are unreasonable.  Accordingly, the Court finds that Plaintiff has met his burden in proving a reasonable hourly rate for Mr. Page and Mr. Harrington.

Although Plaintiff has not submitted any supporting certifications or affidavits relating to the reasonableness of the proffered $250/hour rate of Mr. Ben-Asher, Plaintiff has submitted the most recent fee schedule of Community Legal Services ("CLS").  In determining a reasonable hourly rate for attorney's fees, the Third Circuit has cited with approval the CLS fee schedule.  See Maldonado v. Houstoun, 236 F.3d 181, 187 (3d Cir. 2001).  An attorney with Mr. Ben-Asher's six years of experience, according to the CLS schedule, typically bills between $265 and $335 per hour.  Attorney's Fees, Community Legal Services of Philadelphia, http://clsphila.org/about-cls/attorney-fees (last updated Sept. 12, 2014).   Additionally, an award at the requested rate of $250/hour is consistent with rates for associate attorneys that other courts in this District have approved.  See; N.J. Primary Care Ass'n, Inc. v. State of N.J. Dep't of Human Servs., No. 12-413, 2013 WL 3288082, at *7 (D.N.J. June 28, 2013) (approving rate of $225 for associate attorney); Warner v. Twp. of S. Harrison, No. 09-6095, 2013 WL 3283945, at *9 (D.N.J. June 27, 2013) (same); Robinson v. Jordan, No. 08-5863, 2012 WL 2397446, at *2 (D.N.J. June 25, 2012) (approving rate of $275 for associate attorney).  Moreover, Defendant, without citing to any

10

supporting authority or pointing to any evidence in the record, only requests a reduction of $25/hour in Mr. Ben-Asher's fee, which in itself suggests an award of $250/hour is not unreasonable. See New Jersey Primary Care, 2013 WL 3288082 at *7 (finding $25/hour difference between Plaintiff's requested rate and Defendant's suggested reduced rate for attorney's fees negligible). The Court therefore finds that Plaintiff's requested rate of $250/hour for Mr. Ben-Asher is reasonable.

### 2. Reasonable Hours Expended on Litigation

Plaintiff submits a fee application for 576 hours, for all work prior to March 31, 2015, and an additional 43.1 hours[6] for work completed after March 31, 2015. Defendant argues that hours expended on pre-litigation expenses, litigation of an unemployment claim before the Unemployment Appeals Tribunal, retention of expert witness Paul Gazaleh, and vague entries in the billing records should be deducted from the lodestar amount. Defendant further argues that Plaintiff should not be awarded fees for excessive, redundant, or otherwise unsuccessful litigation tactics. Defendant also asserts that Plaintiff's fee award should be reduced due to "exaggerated fees." Finally, Defendant requests an 80% reduction in the lodestar amount because Plaintiff was unsuccessful on four of the five claims initially brought in this case. The Court will address each argument in turn.

The Court need not accept an attorney's representation of time expended litigating a case as time "reasonably" expended. Blakey, 2 F. Supp. 2d at 604; Rendine, 141 N.J. 335. To determine whether the hours expended in the litigation were reasonable, the Court must "go line,

---

[6] While Mr. Harrington's listed hour total in the Reply Brief is 36.3, this is a typographical error. Mr. Harrington has submitted evidence of only 33.8 hours spent on this matter since March 31.

by line, by line" through Plaintiff's billing records supporting the application. Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001).

### i. Pre-Litigation Expenses

Defendant argues that hours expended on pre-complaint litigation expenses should be deducted from the fee award. The Court disagrees. Time spent on activities associated with the preparation of filing a lawsuit is compensable, as is time spent on background research and phone calls related to the case. See T.B. v. Mount Laurel Bd. of Educ., No. 09-4780, 2012 WL 1079088, at *5 (D.N.J. Mar. 30, 2012). Thus, Plaintiff's counsels' time spent consulting with the client over the phone and drafting and revising the initial complaint were hours reasonably expended on litigating this case and advancing Plaintiff's claims. Accordingly, the Court will grant recovery of attorney's fees for such activity.

### ii. Time Spent on Unemployment Claim

Defendant next argues that time spent litigating Plaintiff's unemployment claim should be deducted from the fee award. The Court agrees. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Rode, 892 F.2d at 1183 (citing Hensley, 461 U.S. at 433). Here, the time spent litigating Plaintiff's unemployment claim was not necessary to advance the claims against Defendant. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (finding time spent pursuing optional administrative proceedings can only be properly included in calculation of attorney's fees if the work was "useful and of a type ordinarily necessary" to produce the result of litigation). Evidence of the unemployment proceedings was not admitted at trial and thus had no bearing on the actual outcome of the case. Cf. Keenan v. City of Philadelphia, 983 F.2d 459, 474 (3d Cir. 1992) (finding inclusion of hours expended on separate arbitration proceeding into lodestar was not an abuse of discretion

12

because arbitrator's decision was read to the jury as favorable evidence for Plaintiff at trial). Accordingly, 5.5 hours billed by Mr. Page and 3.5 hours billed by Mr. Ben-Asher, valued at their current rates of $400/hour and $250/hour, respectively, will be deducted from the fee award for a total reduction of $3,075.

### iii. *Specificity of Billing Records*

Defendant argues that Plaintiff's counsel's billing records contain vague entries that should be deducted from the lodestar. The Court disagrees and is satisfied that Plaintiff's entries are sufficiently specific to allow the Court to determine the reasonableness of counsel's hours expended in litigating this case.

Plaintiff's counsel must document the hours expended on the litigation with "sufficient specificity" to the "extent necessary for the district court to 'determine if the hours claimed are unreasonable for the work performed.'" Washington v. Philadelphia Cnty. Court of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996) (quoting Rode, 892 F.2d at 1190 (citation omitted)). If "the documentation of hours is inadequate," the Court may "reduce the award accordingly." Id. Plaintiff need not provide the exact number of minutes or the exact activity performed each hour to be sufficiently specific. Rode, 892 F.2d at 1190.

Here, Plaintiff has provided computer-generated summaries of contemporaneous time records of each attorney involved in this case. These summaries of expended hours showed each attorney's daily activities in chronological order, and included both descriptions of each listed activity and the time consumed performing that activity. Although several entries contain only general descriptions of the activity performed by counsel, such as "t/c with client," such entries have been found sufficiently specific by courts in the past. See Shanea S. v. School Dist. of Philadelphia, No. 12-1056, 2014 WL 2586940, at *6 (E.D. Pa. June 10, 2014). Furthermore, the

13

Third Circuit has found that such computer-generated summaries meet the required level of specificity in establishing reasonable hours expended on litigation. See Rode, 892 F.2d at 1190 (finding sufficient specificity where computer generated summaries provided "the date the activity took place."); Keenan, 983 F.2d at 473 (approving use of computer generated summaries that listed date, time consumed, and activity performed of each attorney). The Court has reviewed each billing entry and finds each to be sufficiently specific to justify reimbursement.

### iv.     *Expert Witness Fees*

Defendant challenges the compensation of attorneys' fees and costs related to the retention of expert witness Paul Gazaleh and argues that such fees should be deducted from the lodestar. The Court agrees. Expert witness fees may be recovered if the expenses were "reasonable and necessary" to the success of Plaintiff's claims. See Sergeant Hurley v. Atlantic City Police Dept., Nos. 93-260, 94-1122, 1996 WL 549298, at *7 (D.N.J. July, 12, 1996). Here, the expert testified specifically with respect to front pay, which the jury did not award. His expertise was unnecessary to the back pay determination. Defendant does not specific which attorney fee entries should be deducted from the fee award. The Court has carefully reviewed Plaintiff's submissions and is satisfied that Mr. Page and Mr. Harrington's hours should be reduced by 10.6 hours and 16.05, respectively. The Court further concludes that $7,280.88 in expert-related costs should be deducted as well.

### v.     *Exaggerated Fees*

Defendant next argues that the entire fee application should be denied because it is exaggerated. The Court disagrees. Defendant does not raise specific objections to the fee award application and instead finds fault with the amount of time Plaintiff's counsel spent on discovery and trial preparation. But nothing in the record supports Defendant's contention that there is an

"inexplicable disconnect" in the hours Plaintiff asserts were spent on various phases of the litigation. Defendant also appears to argue that Mr. Page's billing records are duplicative of the work billed by Mr. Harrington. Having carefully reviewed the billing records of both attorneys, the Court is satisfied that the records are not duplicative. There is nothing in Plaintiff's billing records to suggest that Mr. Page performed, and billed for, the same exact activities performed and billed by Mr. Harrington.

### vi. Time Spent on Unsuccessful Litigation Tactics

Defendant asserts that Plaintiff's counsel's time spent taking unreasonable positions, or positions contrary to law, on issues at trial should be excluded from the lodestar amount. Specifically, Defendant argues that time spent unsuccessfully arguing for the admissibility of certain text messages should not be compensable. The Court disagrees.

Plaintiff need not prevail on every contention made at trial; rather the focus is on the overall result achieved in the litigation. See Hensley, 461 U.S. at 435. Hours may be compensable if spent on a "reasonable strategy that does not succeed." Blakey, 2 F. Supp. 2d at 607. Moreover, the failure of certain motions "is insufficient to warrant a fee reduction under Hensley." Blum v. Witco Chem. Corp., 829 F.2d 367, 378 (3d Cir. 1987).

Although the text messages were not admitted into evidence, Plaintiff was able to refer to them at trial to demonstrate that he had contacted Defendant's employees. Furthermore, contrary to Defendant's contention, the challenged evidence was relevant to Plaintiff's retaliation claim. As such, the Court cannot say that Plaintiff's counsel's time spent arguing this specific evidentiary issue was not reasonable or necessary. The Court therefore rejects Defendant's argument for a deduction of time expended on this issue.

### *vii.     Time Spent Litigating Unsuccessful Claims*

Finally, Defendant argues that the lodestar should be reduced by 80% for time spent litigating unsuccessful claims. The Court disagrees.

Where a Plaintiff has achieved excellent results, his attorney should recover fees for all hours reasonably expended on the litigation. Hensley, 461 U.S. at 434. If, on the other hand, a plaintiff has achieved "only partial or limited success," a lodestar based upon the "hours reasonably expended on the litigation as a whole" may be excessive. Blakey, 2 F. Supp. 2d at 605. Thus, when a party has only prevailed on a fraction of claims brought, the Court must determine whether: (1) "the unsuccessful claims were unrelated to the successful claims"; and (2) the prevailing party "achieved a level of success that makes the total hours reasonably expended a satisfactory basis for making a fee award." Id. (citing Hensley, 461 U.S. at 434). The Court maintains, however, a great deal of discretion in determining whether to adjust the fee award. Blakey, 2 F. Supp. 2d at 602.

Though some of Plaintiff's alternative theories of wrongdoing related to his termination were dismissed or rejected by the jury, Plaintiff nonetheless achieved an excellent result. Plaintiff's unsuccessful claims were integrally intertwined with Plaintiff's successful retaliation claim. Indeed, each of the five claims centered on Plaintiff's termination by Defendant as a result of his need to take medical leave. The unsuccessful claims for which Defendant seeks a reduction in fees were claims raised in the alternative to Plaintiff's retaliation claim. Alternative legal theories raised in good faith which a jury rejects, a court dismisses, or Plaintiff withdraws cannot be the basis for reducing a fee award. Hensley, 461 U.S. at 435. This is particularly evident in discrimination cases, where multiple claims often "involve a common core of facts or [are] based on related legal theories." Id. Each of Plaintiff's five claims revolved around the same events,

witnesses, and facts. As such, the Court cannot separate work that was required specifically for Plaintiff's retaliation claim from work required on any of the four unsuccessful claims.

Nevertheless, even though Plaintiff's claims were intertwined, a fee reduction may still be appropriate if Plaintiff's relief "is limited in comparison to the scope of litigation as a whole." Id. Thus, the Court may adjust the lodestar amount based "on the degree of success" Plaintiff achieved. Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist., 152 F.3d 228, 232 (3d Cir. 1998) (citing Hensley, 461 U.S. at 433). Plaintiff's overall success in this case justifies a fee award based on the total hours reasonably expended in the litigation. Plaintiff not only recovered damages for back pay and emotional distress, but also $60,000 in punitive damages. Plaintiff's total recovery of $200,000 represented a substantial victory for Plaintiff and was not, as Defendant characterizes it, a nominal award. Furthermore, in light of the Court's decision to reduce the lodestar by the amount of attorney time spent and expenses incurred on Plaintiff's unsuccessful front-pay claim, the Court sees no reason to reduce the fee award further on substantially the same grounds. Accordingly, the Court denies Defendant's request to reduce the lodestar by 80%.

The Court therefore calculates the final lodestar to be $212,880, divided as follows:

- Colin Page - $120,580
- John Harrington - $78,487.50
- Josh Ben-Asher - $13,812.50

### 3. Contingency Fee Enhancement

Plaintiff argues that he is entitled to a 35% contingency fee enhancement of the lodestar amount. The Court finds that 35% is excessive, and instead will grant a 25% contingency fee enhancement.

Because Plaintiff prevailed on his retaliation claim under NJLAD, the Court applies New Jersey law to determine whether a contingency fee enhancement is warranted. Blakey, 2 F. Supp. 2d at 602. The New Jersey Supreme Court has instructed trial courts to consider contingency enhancements under state fee-shifting statutes such as NJLAD in order to "reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." Rendine, 141 N.J. at 337. The Court must determine whether the case was taken on a contingent basis, whether the risk of nonpayment for Plaintiff's counsel was mitigated in any way, and whether any other economic risks may have been aggravated by contingent payment. Id. at 339 (quotation omitted). Contingency enhancements normally fall between five and fifty percent of the lodestar amount, with the typical contingency enhancement rate falling between 20% and 35% of the lodestar. Id. at 343.

The Court first notes that Defendant's arguments concerning the skill of counsel and the novelty, or lack thereof, are wide of the mark. A fee multiplier or enhancement based on exceptional results is a separate consideration from a Rendine contingency enhancement. Jefferson v. City of Camden, No. 01-4218, 2006 WL 1843178, at *19 (D.N.J. June 30, 2006). Plaintiff does not argue for an upward adjustment of the lodestar amount based on exceptional results, and that issue is therefore not before the Court.

As the retainer agreement makes clear, counsel took this case on a contingent basis. See Retainer Agreement with Barry Boles, Dkt. No. 87 Ex. H. The agreement indicates that counsel agreed to accept either one-third of Plaintiff's award or a fee amount set by the Court. Id.

Plaintiff's counsel was also unable to mitigate the risk of nonpayment. Plaintiff did not have a particularly strong case in which it was exceedingly likely he would prevail at trial. Nor did Plaintiff pursue a claim for which the potential recovery was enough to offset the risk imposed

18

by the entirely contingent nature of the fee and the risk of failure in the litigation. However, Plaintiff's requested 35% enhancement is at the high end of the range articulated by the New Jersey Supreme Court for enhancements in typical cases. Instead, based upon careful consideration of the entire record, arguments made at trial, and the Court's feel of the case, the Court will grant a 25% contingency enhancement to the lodestar fee. Thus, the total award for attorney's fees will be the final lodestar calculation of $212,880 plus a 25% contingency enhancement fee for a total of $266,100.

### 4. Costs

Plaintiff also seeks an award of costs for the litigation totaling $15,508.11. The contingency enhancement does not apply to the calculation of costs and expenses in the litigation. Blakey, 2 F. Supp. At 608. The Court has reviewed Plaintiff's itemized list of costs and finds that these costs are reasonable in the context of this specific case, except for the costs accrued for Plaintiff's expert. Thus, the Court subtracts $7,280.88 and thus will award Plaintiff costs of $8,227.23.

### 5. Prejudgment Interest

Lastly, Plaintiff requests an award of prejudgment interest of $9,924.63.[7] Prejudgment interest is mandated by New Jersey Court Rule 4:42-11(b) for NJLAD cases. Blakey, 2 F. Supp. 609. Accordingly, the Court will grant Plaintiff's request for prejudgment interest in the amount of $9,924.63.

---

[7] Plaintiff initially requested interest totaling $13,349.60. Defendant challenged this amount, asserting that the harm suffered by Plaintiff did not all occur as of the Complaint's filing, but instead throughout the 2011-2013 period. Plaintiff agreed and provided a revised, pro-rated prejudgment interest calculation. See Ex. M, Dkt. No. 100-2.

### 6. Summary

Based upon the foregoing, Plaintiff is awarded $266,100 in attorneys' fees, $8,227.23 in costs, and $9,924.63 in prejudgment interest for a total award of $284,251.86.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion is **DENIED** and Plaintiff's motion is **GRANTED-IN-PART.** An appropriate form of order shall issue.

*/s/ Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**